[No. C028340. Third Dist. Oct. 1, 1999.]

ANNA JORDAN et al., Plaintiffs and Respondents, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and
Appellants.

450

## COUNSEL

Milberg, Weiss, Bershad, Hynes & Lerach, Leonard B. Simon, Alan M. Mansfield, William S. Dato; Weiss & Yourman, Joseph H. Weiss, Joseph D. Cohen; Sullivan, Hill, Lewin, Rez, Engel & Labazzo, Michael A. Labazzo; Blumenthal Ostroff & Markham, Norman Blumenthal and David R. Markham for Plaintiffs and Respondents.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Lawrence K. Keethe and Michael J. Cornez, Deputy Attorneys General, for Defendants and Appellants.

## OPINION

**MORRISON, J.**—Plaintiffs, four individuals, brought suit for a refund of the $300 motor vehicle smog impact fee (Rev. & Tax. Code, §§ 6261-6263) each had paid for registering a car last registered outside California, even though the car passed California's smog check test. They also sought a declaration that the motor vehicle smog impact fee was unconstitutional. Defendants, State of California, Department of Motor Vehicles (DMV) and

the State Board of Equalization (SBE), appeal from the judgment in favor of plaintiffs. At issue in this case is whether the motor vehicle smog impact fee is unconstitutional under the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3) or under article XIX of the California Constitution, and if so, what the proper remedy is in this case.

Defendants contend the motor vehicle smog impact fee does not violate the commerce clause of the United States Constitution because Congress has created two classes of vehicles so there is no discrimination in treating one class differently. They contend the motor vehicle smog impact fee does not violate article XIX of the California Constitution, requiring taxes and fees on motor vehicles be used for enumerated transportation purposes, because the fee was imposed pursuant to the Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) and therefore excepted from the constitutional restriction. Defendants contend the trial court exceeded its jurisdiction in ordering defendants to file refunds on behalf of those who paid the fee, in addition to ordering refunds to the plaintiffs. Finally, they raise two contentions concerning the proper party defendants and the admissibility of evidence considered by the trial court.

We find the motor vehicle smog impact fee is unconstitutional under the commerce clause and violates article XIX of the California Constitution. We find, however, the trial court exceeded its jurisdiction in ordering defendants to file refunds on behalf of payors who are not parties to this suit.

## FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of the federal and state regulatory schemes for emissions from motor vehicles is helpful to understanding the mechanics of the motor vehicle smog impact fee. California first began to regulate the emission of pollutants from motor vehicles in 1960. (Stats. 1961, First Ex. Sess. 1960, ch. 23, §§ 1-6, pp. 346-352.) A few years later, Congress amended the Clean Air Act to regulate emission standards for new motor vehicles. (42 U.S.C. § 7521 et seq.)

Under federal law, states are prohibited from regulating emission standards for new motor vehicles. (42 U.S.C. § 7543(a).) There is an exception as a waiver may be granted. The statute currently permits a waiver for a state that has adopted standards that "will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." (42 U.S.C. § 7543(b)(1).) California was the only state given a waiver. (*Ford Motor Co.* v. *Environmental Protection Agcy.* (D.C. Cir. 1979) 606 F.2d 1293, 1296 [196 App.D.C. 386].) California has obtained a waiver, known as

"the California waiver," each year. Congress amended the Clean Air Act to permit other states to adopt the California standards, but such states could not adopt a third set of standards. (42 U.S.C. § 7507.)

The result of this regulatory scheme is that new motor vehicles are either California-certified or federally certified. California-certified new motor vehicles have a vehicle emission control label identifying them as such. (Rev. & Tax. Code, § 6262, subd. (c)(3).) Generally, only California-certified vehicles may be sold or registered in California as new motor vehicles. (Health & Saf. Code, § 43151.) All motor vehicles registered in California, whether California-certified or federally certified, must pass a smog check test every two years. (Health & Saf. Code, § 44011.)

In 1990, the California Legislature passed the motor vehicle smog impact fee. (Stats. 1990, ch. 453, § 1, pp. 1955-1956.) There is a $300 fee to register a motor vehicle (with certain specified exceptions, such as pre-1975 model years) in California if the vehicle was last registered outside the state, unless the vehicle is California-certified. (Rev. & Tax. Code, § 6262, subd. (a).)

In enacting the motor vehicle smog impact fee, the Legislature found and declared, as amended later that year, as follows: "(a) Motor vehicles certified to meet California air quality standards (California-certified vehicles) are generally significantly more costly than otherwise equivalent vehicles sold elsewhere.

"(b) Motor vehicles generally are a major cause of poor air quality. However, California-certified vehicles have a less deleterious impact on air quality than other vehicles because California-certified vehicles are designed and manufactured to meet California's motor vehicle emission standards which are the most stringent emission standards in the nation and are, therefore, less polluting. Poor air quality imposes substantial costs on health services and environmental and other general fund programs.

"(c) Drivers of California-certified vehicles, in addition to higher vehicle acquisition costs, pay an added penalty because California-certified vehicles generally achieve lower fuel economy, resulting in a higher motor vehicle fuel tax burden.

"(d) In order to ensure equity between owners of California-certified vehicles and other vehicles, provide funding for environmental programs, and to promote good health and safety standards for the residents of this state, it is appropriate to enact a motor vehicle smog impact fee on non-California certified vehicles." (Rev. & Tax. Code, § 6261.)

Plaintiffs are four individuals who moved to California and registered their federally certified motor vehicles. The vehicles passed the smog check test, but each plaintiff was required to pay the $300 motor vehicle smog impact fee, in addition to the usual license and registration fees. Plaintiffs sought refunds and their claims were denied. After attempts to bring a validation action challenging the motor vehicle smog impact fee and a class action to impose a constructive trust, plaintiffs filed a consolidated second amended complaint seeking refunds of the fees paid and a declaration that the motor vehicle smog impact fee was unconstitutional under the commerce clause and the equal protection clause of the United States Constitution, and under article XIX and the equal protection clause of the California Constitution.[1] Plaintiffs also sought attorney fees.[2]

Plaintiffs moved for summary judgment. They contended the motor vehicle smog impact fee was facially discriminatory because it was imposed on vehicles last registered out of state; it did not advance a legitimate local purpose because there was no factual support for the Legislature's finding that California-certified vehicles were less deleterious to the environment than federally certified vehicles; and there were less burdensome alternatives, such as imposing fees on all vehicles or tiered fees based on the actual emissions produced by the vehicle. Plaintiffs argued the fee violated article XIX of the California Constitution because it is not used for the transportation purposes enumerated in the constitution and it is not a sales or use tax that is exempt from the constitutional restriction.

Plaintiffs asserted it was undisputed that they paid the fee and their requests for a refund were denied; the motor vehicle smog impact fee was passed as part of budget negotiations; the legislative history made reference to the Florida vehicle impact fee that was later struck down as unconstitutional;[3] the constitutional problems with the fees were raised by legislative counsel and the SBE's analysis of the bill; emissions standards for used

---

[1] The consolidated second amended complaint was filed by three plaintiffs. The fourth plaintiff, Michael Foley, filed suit several months later. The record does not reveal when his suit was consolidated with the other, but it occurred before plaintiffs filed the motion for summary judgment.

[2] The issue of attorney fees was addressed in a postjudgment hearing. Plaintiffs request that we take judicial notice of a transcript of that hearing. Since it occurred after the judgment and did not concern any issues raised in this appeal, we decline the request.

[3] Florida passed a vehicle impact fee that imposed a $295 fee on cars purchased or titled in other states that are then registered in Florida. The Florida Supreme Court struck down the vehicle impact fee as violative of the commerce clause. (*Department of Revenue* v. *Kuhnlein* (Fla. 1994) 646 So.2d 717.) The court found Florida had erected a financial barrier that gave Florida used car sellers a significant advantage over similar out-of-state sellers. (*Id.* at p. 724.) Assuming obtaining adequate revenues for road maintenance was a legitimate local purpose, the court found there were less discriminatory methods available. (*Id.* at p. 725.)

vehicles do not differentiate between California-certified vehicles and federally certified vehicles; there was no evidence that federally certified vehicles place more of a burden on the environment than California-certified vehicles; and the proceeds of the fee, less administrative costs, are deposited in the State's general fund.

Defendants opposed the motion. They posed the question as whether the motor vehicle smog impact fee was within California's power, as granted by Congress, to discriminate against interstate commerce as to federally certified vehicles. They contended there was no evidence to support plaintiffs' assertion that the legislative finding that federally certified vehicles were more deleterious to the environment were insupportable and inaccurate. Defendants argued California-certified vehicles were different, pointing to the substantial in-use compliance program under California law for California-certified vehicles. California tests used vehicles to ensure the emission system meets durability standards, and has the right to force manufacturers to recall and repair vehicles if the used vehicles fail the durability test. Defendants urged that article XIX of the California Constitution was inapplicable because the motor vehicle smog impact fee was imposed pursuant to the Sales and Use Tax Law.

Defendants also moved for summary judgment in their favor. They again asserted the question raised by this case was whether Congress's grant to California of the right to restrict interstate commerce ends with new motor vehicles or extends to used motor vehicles. They asserted the motor vehicle smog impact fee was permissible as part of the California waiver.

In support of their motion, defendants asserted as undisputed facts that California had received a waiver every year since 1971 and that 700 to 800 used California-certified vehicles were tested every year as part of California's in-use compliance program, which allowed California to continue to regulate California-certified motor vehicles after they were new.

In support of their motion for summary judgment, plaintiffs offered the declaration of Thomas Austin, a former executive officer of the California Air Resources Board and now a partner in a consulting firm specializing in air pollution. Austin declared his firm had performed a detailed analysis of the differences between California-certified vehicles and federally certified vehicles for model years 1981-1993. The analysis found a majority of federally certified vehicles, 56 percent, "complied with and could have been certified to California emission standards for new vehicles." (Original underscoring.) He further declared there was no differentiation in smog testing for used vehicles, whether California-certified or federally certified. Finally,

he opined that the California waiver did not cover the motor vehicle smog impact fee and a separate waiver would be required. He noted the California waiver applied only to new vehicles.

In reply, defendants asserted there was no interstate commerce discrimination because California-certified vehicles are different, factually and legally, from federally certified vehicles. They argued the motor vehicle smog impact fee furthers the goals of the California waiver.

The trial court ruled that the motor vehicle smog impact fee was a registration fee, not a sales or use tax. Since its proceeds went into the general fund, it violated article XIX of the California Constitution. The remedy, if the fee was otherwise valid, would be an order directing that the funds generated by the fee be placed in an account earmarked for the purposes set forth in article XIX.

The court then turned to the argument that the motor vehicle smog impact fee violated the negative or dormant commerce clause. It found that since the fee drew a distinction based on geographic origin of the vehicle, it was facially discriminatory. It rejected defendants' justification that California-certified vehicles were cleaner than federally certified vehicles because of defendants' lack of evidence and the declaration of Thomas Austin to the contrary. The court found the higher cost of California-certified vehicles did not meet the requirements of the compensatory tax doctrine to serve as a justification. Finally, the court noted defendants completely failed to address the availability of less burdensome alternatives. The court declined to address whether the motor vehicle smog impact fee violated equal protection. It ordered the parties to meet and confer and provide supplemental briefing on the appropriate remedy.

On the issue of the proper remedy, plaintiffs noted that defendants agreed to pay a refund to those who filed timely claims. They then argued the court had broad equitable powers to ensure a meaningful remedy. They asserted the remedy must begin with notice to affected persons that the motor vehicle smog impact fee was, or could be, unconstitutional. Defendants refused to do so, and plaintiffs reluctantly accepted defendants' assertion that they were unable to retrieve the names of those who had paid the fee in a cost-effective manner. Plaintiffs agreed to attempt to provide notice to those who had paid the fee. They argued for an order to refund the fee to those who timely filed for a refund, to order the DMV to notify those who paid the fee in the future, and to impose a constructive trust from which refunds could be paid.

Defendants argued the sole remedy was a refund to plaintiffs, noting the action was not a class action. Defendants argued a constructive trust was

legally impermissible because a demurrer had been sustained to the cause of action seeking a constructive trust.

After the hearing on various remedies, the court gave plaintiffs the opportunity to file briefing as to whether the court had authority to require defendants to transfer motor vehicle smog impact fees monies from the general fund to a segregated fund, as a remedy for violation of article XIX of the California Constitution. The court also required defendants to submit a proposed notice about the motor vehicle smog impact fee. The parties submitted supplemental briefing on the appropriate remedy for the violation of article XIX. Defendants submitted a proposed "fact sheet" indicating that the motor vehicle smog impact fee had been found unconstitutional, that the judgment would be appealed, and providing information as to how to request a refund.

The final judgment declared the motor vehicle smog impact fee unconstitutional under the commerce clause and article XIX of the California Constitution. It ordered defendants to enter a claim for refund for those who paid the fee after the date of entry of the judgment. As to those who paid the fee on or after September 19, 1992 (three years before the initial complaint by two of the plaintiffs), but prior to entry of judgment, the court ordered defendants to file claims for refunds or to set up and file a class action refund claim. Plaintiffs were to receive a refund of the fee.

DISCUSSION

I

"The Commerce Clause provides that '[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States.' Art I, § 8, cl 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce. [Citations.] The Framers granted Congress plenary authority over interstate commerce in 'the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.' [Citations.] 'This principle that our economic unit is the Nation, which alone has the gamut of powers necessary to control the economy, . . . has as its corollary that the states are not separable economic units.' [Citation.]

■ "Consistent with these principles, we have held that the first step in analyzing any law subject to judicial scrutiny under the negative Commerce

Clause is to determine whether it 'regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce.' [Citations.] As we use the term here, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid. [Citations.]" (*Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore.* (1994) 511 U.S. 93, 98-99 [114 S.Ct. 1345, 1349-1350, 128 L.Ed.2d 13, 20-21].)

Once a law has been found to be discriminatory, it will be held invalid unless its proponents "can 'sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.' [Citations.]" (*Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore., supra,* 511 U.S. 93, 100-101 [114 S.Ct. 1345, 1351].)

A state tax that affects interstate commerce will survive a commerce clause challenge if the activity it taxes has a sufficient nexus to the state; the tax does not discriminate against interstate commerce; the tax is fairly apportioned; and it is related to services provided by the state.[4] (*Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274, 277-278 [97 S.Ct. 1076, 1078-1079, 51 L.Ed.2d 326, 330].)

■ Whether the motor vehicle smog impact fee violates the commerce clause thus turns on whether it discriminates against interstate commerce. If it is discriminatory, ". . . it is virtually *per se* invalid." (*Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore., supra,* 511 U.S. at p. 99 [114 S.Ct. at p. 1350].)

Defendants contend there is no discrimination because Congress has declared that California-certified and federally certified vehicles are two distinct products. Defendants rely on *General Motors Corp.* v. *Tracy* (1997) 519 U.S. 278 [117 S.Ct. 811, 136 L.Ed.2d 761]. "Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities. Although this central assumption has more often than not itself remained dormant in this Court's opinions on state discrimination subject to review under the dormant Commerce Clause, when the allegedly competing entities provide different products, as here, there is a threshold question whether the companies are indeed similarly situated for constitutional purposes. This is so for the simple reason that the difference in products may mean that the different entities serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed. If in

[4]The motor vehicle smog impact fee was passed as a tax levy. (Stats. 1990, ch. 453, § 2, p. 1956.) Plaintiffs do not dispute that characterization.

fact that should be the case, eliminating the tax or other regulatory differential would not serve the dormant Commerce Clause's fundamental objective of preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors. . . . Thus, in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference, whether by express discrimination against interstate commerce or undue burden upon it, to which the dormant Commerce Clause may apply. The dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." (*Id.* at pp. 298-300 [117 S.Ct. at pp. 824-835], fn. omitted.)

In *Tracy*, the Supreme Court looked to the markets to determine if the products were similarly situated. At issue was an Ohio tax scheme that imposed sales and use taxes on independent marketers of natural gas, but imposed no such taxes on natural gas utilities, termed local distribution companies or LDC's. In determining whether LDC's and independent marketers were similarly situated, the court looked to their markets. LDC's had a core market of small captive users, typified by residential users who want and need the bundled product of regulated natural gas. (*General Motors Corp.* v. *Tracy, supra*, 519 U.S. at pp. 301-302 [117 S.Ct. at pp. 825-826].) This market was distinct from the market for bulk users served by the independent marketers. (*Id.* at p. 302 [117 S.Ct. at p. 826].) "[T]here is good reason to assume that any pricing changes that could result from eliminating the sales tax differential challenged here would be inadequate to create competition between LDC's and marketers for the business of the utilities' core home market." (*Ibid.*)

The court then recognized that there was the possibility of competition between the LDC's and the independent marketers for the noncaptive market. "Thus, the question raised by this case is whether the opportunities for competition between marketers and LDC's in the noncaptive market requires treating marketers and utilities as alike for dormant Commerce Clause purposes. Should we accord controlling significance to the noncaptive market in which they compete, or to the noncompetitive, captive market in which the local utilities alone operate?" (*General Motors Corp.* v. *Tracy, supra*, 519 U.S. at pp. 303-304 [117 S.Ct. at pp. 826-827].) The court determined the importance of not imperiling the delivery of bundled natural gas to the captive market, the court's lack of expertness to predict the effects of judicial intervention on the LDC's capacity to serve that market, and the ability of Congress to intervene, favored giving greater weight to the captive market and treating LDC's and independent marketers as dissimilar entities. (*Id.* at p. 304 [117 S.Ct. at pp. 826-827].)

Defendants focus on the court's reliance on the regulatory scheme for natural gas and argue the regulatory scheme for motor vehicles emissions is analogous. If a fungible product such as natural gas can be considered dissimilar if it serves different markets, they argue, motor vehicles that are subject to two different regulatory schemes by congressional decree, should also be treated as dissimilar for commerce clause purposes.

Defendants' reading of *Tracy* misconstrues the role of regulation and markets in commerce clause analysis. Bundled, regulated natural gas and unbundled, unregulated natural gas were different products not because of the difference in regulation, but because they served different markets. The significance of regulation was that it had created the market structure. (*General Motors Corp.* v. *Tracy, supra*, 519 U.S. at p. 293 [117 S.Ct. at p. 821].) It was the importance of protecting the captive market—where there was no competition—that justified treating LDC's, the supplier to the captive market, as dissimilar to the independent marketers. (*Id.* at p. 304 [117 S.Ct. at pp. 826-827].)

Under *General Motors Corp.* v. *Tracy, supra*, 519 U.S. 278, discrimination can be found only by comparing similarly situated entities. When the entities provide different products to different markets, they are not similarly situated. The focus is on markets, not taxpayers. Thus, we do not compare plaintiffs to others registering motor vehicles in California. Rather, the relevant comparison is those who sell used federally certified vehicles to those who sell used California-certified vehicles. It is more expensive to register a used federally certified vehicle in California than a comparable used California-certified vehicle. The question is whether there are different markets for used California-certified vehicles and used federally certified vehicles.

For used California-certified vehicles and used federally certified vehicles to constitute different products that are not similarly situated for commerce clause purposes, they must have different markets and not compete with each other. Defendants have failed to make that showing. They state simply, "Clearly, as to new vehicles, they do not compete as federally certified vehicles cannot be sold as new in California." They do not address vehicles that are no longer new, and it is these federally certified vehicles that are subject to the motor vehicle smog impact fee. Defendants have not offered any evidence that used California-certified vehicles serve a different market than used federally certified vehicles. They have failed to show that the different certifications create different products in the used vehicle market.

Defendants argue that Congress created two classes of vehicles with the California waiver and that this congressional designation must be accepted.

In support of this argument they cite to *Shamrock Farms Co.* v. *Veneman* (9th Cir. 1998) 146 F.3d 1177, which upheld California's more stringent standards for milk products. In *Shamrock Farms*, the Ninth Circuit found California's regulatory scheme for milk products was immune from commerce clause analysis because Congress had exempted California's milk standards from " 'any other provision of law' " in the federal Farm Bill (Federal Agricultural Improvement and Reform Act of 1996, Pub.L. No. 104-127 (Apr. 4, 1996) 110 Stat. 888). (*Id.* at pp. 1180-1182.)

■ "[B]ecause of the important role the commerce clause plays in protecting the free flow of interstate trade, this Court has exempted state statutes from the implied limitations of the Clause only when the congressional direction to do so has been 'unmistakably clear.' [Citation].)" (*Maine* v. *Taylor* (1986) 477 U.S. 131, 138-139 [106 S.Ct. 2440, 2447-2448, 91 L.Ed.2d 110, 121].) ■ Congress clearly exempted California's preference for new California-certified vehicles from Commerce Clause scrutiny in the California waiver. But the statutory provision for the waiver speaks only of "new motor vehicles or new motor vehicle engines." (42 U.S.C. § 7543(b)(1).)

Defendants identify no congressional act that is "unmistakably clear" in exempting California regulation and taxation of used motor vehicles from commerce clause analysis. Indeed, on appeal they have abandoned the argument made below that the motor vehicle smog impact fee is authorized by the California waiver. While the differences between California-certified vehicles and federally certified vehicles may, as defendants assert, remain after the vehicles are no longer new, Congress has not expressly granted California the right to continue to treat the two classes of vehicles differently, immune from any commerce clause challenge.

Defendants' challenge to the trial court's determination that the motor vehicle smog impact fee violates the commerce clause is based solely on showing the two types of vehicles, California-certified and federally certified, are not similarly situated. They do not contest that if the products are similar, then there is discrimination against interstate commerce. The motor vehicle smog impact fee applies only to out-of-state vehicles being registered in California, unless they are California-certified. The effect of this fee is similar to the practice of charging license fees and use taxes on vehicles sold outside California that are higher than the license fees and taxes imposed on vehicles sold inside California. "The discrimination between interstate and local commerce is plain. . . . [T]he violation of the commerce clause is patent." (*Woosley* v. *State of California* (1992) 3 Cal.4th 758, 778 [13 Cal.Rptr.2d 30, 838 P.2d 758].) Nor do defendants attempt to scale the

hurdle of "virtually *per se*" invalidity by showing the motor vehicle smog impact fee advances a legitimate California purpose that could not be served by reasonable, nondiscriminatory means. (*Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore., supra,* 511 U.S. 93, 100-101 [114 S.Ct. 1345, 1350-1351]; *Pacific Merchant Shipping Assn.* v. *Voss* (1995) 12 Cal.4th 503, 527, and fn. 13 [48 Cal.Rptr.2d 582, 907 P.2d 430].)

Defendants failed to show that California-certified vehicles and federally certified vehicles serve different markets and thus are different products under *General Motors Corp.* v. *Tracy, supra,* 519 U.S. 278. Having limited their argument on appeal to this issue, their failure is fatal to their attempt to overturn the trial court's declaration of unconstitutionality. The trial court did not err in declaring that the motor vehicle smog impact fee violates the commerce clause.

## II

Section 2 of article XIX of the California Constitution provides that "Revenues from fees and taxes imposed by the State upon vehicles or their use or operation," less administrative costs, shall be used for certain enumerated transportation purposes. Section 7 provides an exception: "This article shall not affect or apply to fees or taxes imposed pursuant to the Sales and Use Tax Law or the Vehicle License Fee Law, and all amendments and additions now or hereafter made to such statutes." (Cal. Const., art. XIX, § 7.)

It was undisputed that the revenues from the motor vehicle smog impact fee were not used for the enumerated transportation purposes, but were placed in the state's general fund.[5] (Rev. & Tax. Code, § 6262, former subd. (b), added by Stats. 1990, ch. 453, § 1, p. 1956.)

The trial court found that the motor vehicle smog impact fee was not a sales or use tax. Sales and use taxes are based on a percentage of the sales price of the item. (*Woosley* v. *State of California, supra,* 3 Cal.4th 758, 772.) Therefore, placing revenues from the fee into the general fund violated article XIX of the California Constitution. Defendants do not argue the motor vehicle smog impact fee is a sales or use tax. They argue the true nature of the fee is irrelevant. The pertinent fact is that the Legislature declared that it imposed the fee pursuant to the Sales and Use Tax Law.

---

[5]The Legislature has amended the statute to provide that on and after July 1, 1998, revenues from the motor vehicle smog impact fee shall be deposited in the High Polluter Repair and Removal Account in the Vehicle Inspection and Repair Fund. (Rev. & Tax. Code, § 6262, subd. (d), amended by Stats. 1997, ch. 802, § 11.)

(Rev. & Tax. Code, § 6262, subd. (f).) Defendants contend there has been compliance with article XIX. They contend their position is consistent with the clear and unambiguous language of the constitution. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Defendants' argument focuses on the word "imposed." They contend the Legislature may impose a fee pursuant to the Sales and Use Tax Law even if the fee is not a sales or use tax. This argument ignores that the constitution requires the fee or tax be imposed "pursuant to" the Sales and Use Tax Law. ■ "Pursuant to" means: "in the course of carrying out; in conformance to or agreement with; according to." (Webster's New Internat. Dict. (3d ed. 1971) p. 1848, col. 1.) ■ The exception of section 7 of article XIX of the California Constitution applies only to fees or taxes that are imposed "in conformance to" the Sales and Use Tax Law or the Vehicle License Fee Law. In other words, the fees or taxes must be sales and use taxes or vehicle license fees.

Defendants contend the Legislature is free to designate any tax or fee as exempt from article XIX of the California Constitution. The Legislature cannot circumvent the funding restrictions of article XIX by calling a sales or use tax that which is neither.[6] The California Constitution is a limitation or restriction on the powers of the Legislature. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691-692 [97 Cal.Rptr. 1, 488 P.2d 161].) Legislative attempts to circumvent constitutional restrictions by renaming a tax have been struck down. In *Rider* v. *County of San Diego* (1991) 1 Cal.4th 1 [2 Cal.Rptr.2d 490, 820 P.2d 1000], a county expressly designated a tax as a "general tax" to avoid the two-thirds approval requirement of article XIII B, section 4 of the California Constitution. Although considerable weight is given to the Legislature's denomination, it is not conclusive. (*Douglas Aircraft Co., Inc.* v. *Johnson* (1939) 13 Cal.2d 545, 550 [90 P.2d 572].) The *Rider* court determined the legislative "nomenclature is of minor importance in light of the realities underlying its adoption and its probable object and effect. [Citation.]" (*Rider* v. *County of San Diego, supra*, 1 Cal.4th 1, 15.) The court determined the tax in question was a "special tax" requiring two-thirds approval; this finding was necessary to preserve the spirit of Proposition 13's tax limitations. (*Ibid.*)

Defendants contend the Legislature can draft legislation to avoid constitutional restrictions, citing *Coleman* v. *County of Santa Clara* (1998) 64 Cal.App.4th 662 [75 Cal.Rptr.2d 516]. In *Coleman*, the County of Santa

---

[6]Defendants' argument brings to mind the old riddle: If you call a tail a leg, how many legs does a dog have? The answer is four; calling a tail a leg does not make it one. Or, that which we call a rose by any other name would smell as sweet.

Clara passed Measure A and Measure B. Measure A was an advisory measure, stating the intent that any new sales tax would be used for transportation improvements. (*Id.* at p. 665.) Measure B was a sales tax for general county purposes. (*Id.* at p. 666.) The Court of Appeal found Measure B was a general tax, requiring only a simple majority for approval. It rejected the argument that the two measures were inseparable and must be construed as creating a special tax. The court noted the Legislature's motivation is not a proper subject of consideration, except in rare circumstances. The validity of the legislation should be determined on its own terms. (*Id.* at p. 672.)

The terms of the motor vehicle smog impact fee indicate it is a tax or fee on motor vehicles; the flat $300 fee is not a sales or use tax; and its revenues are placed in the general fund. On its own terms, the motor vehicle smog impact fee violates article XIX of the California Constitution.

### III

Defendants contend the trial court exceeded its jurisdiction in ordering defendants to file claims for refunds on behalf of taxpayers who paid the motor vehicle smog impact fee but did not file for refunds themselves. We agree.

Due process requires that a state provide a taxpayer who successfully challenges a tax assessment as erroneous or illegal with a " 'clear and certain remedy.' " (*McKesson Corp.* v. *Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 39 [110 S.Ct. 2238, 2251-2252, 110 L.Ed.2d 17, 37.) States have a legitimate interest in sound fiscal planning and that interest is sufficient to allow states to use certain procedural safeguards against the disruptive effects of a tax scheme's invalidation when providing refunds, such as offering refunds only to those who paid the tax under protest or enforcing a short statute of limitations. (*Id.* at p. 50 [110 S.Ct. at p. 2257].)

"The California Constitution expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature. Article XIII, section 32, of the California Constitution provides in this regard: 'After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*' (Italics added.) This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. [Citation.]" (*Woosley* v. *State of California, supra*, 3 Cal.4th 758, 789.)

██     The Revenue and Taxation Code provides a manner for refunds, beginning with the taxpayer filing a claim. (Rev. & Tax. Code, § 6901 et seq.) Defendants contend this remedy is adequate for due process. They assert the trial court's order that they file a claim for refund on behalf of those who paid the motor vehicle smog impact fee is flawed in several respects. The SBE has no authority to file claims for refunds and cannot act outside its statutory authority. The court's order for providing refunds is not that provided by the Legislature, as required by the California Constitution. A class claim for refunds, one option as to taxpayers who previously paid the fee, requires the express consent of each class member. (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 791.) Finally, "neither this court nor the trial court has unfettered discretion to 'fashion an equitable remedy on behalf of the [taxpayers who paid the motor vehicle smog impact fee].' " (*Rider* v. *County of San Diego* (1992) 11 Cal.App.4th 1410, 1421 [14 Cal.Rptr.2d 885].)

Plaintiffs cite no authority supporting the trial court's order. Instead, they argue the order is necessary to provide a meaningful remedy in light of defendants' egregious actions in passing and collecting an illegal tax and then opposing efforts to certify the affected class.

The trial court provided a remedy for most of those who paid the motor vehicle smog impact fee. This action, however, is not a class action; plaintiffs are only four individuals, not the class affected by the motor vehicle smog impact fee. Requiring defendants to file refund claims on behalf of certain taxpayers who paid the motor vehicle smog impact fee is, in effect, entering a judgment of refund in favor of those taxpayers. If the trial court's declaration that the motor vehicle smog impact fee is invalid is upheld on appeal, the filing of a claim for refund will result in a refund. Other than the four named plaintiffs, those who paid the motor vehicle smog impact fee are not parties to this action. "For over 50 years California has recognized that a judgment may not be entered either for or against one who is not a party to an action or proceeding. [Citations.]" (*Bronco Wine Co.* v. *Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717 [262 Cal.Rptr. 899] [reversing judgment in favor of nonparty growers].)

Plaintiffs contend the court's order is necessary to prevent the state from the unjust enrichment of retaining the proceeds of the unconstitutional fee. They cite to *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153], in which the court expressed concern about a procedure for refunds of sale and use taxes set up by the board that could result in the board being unjustly enriched. Only the retailer could obtain a refund of sales or use tax, but since the retailer had to pay it over to the

customer, he had no incentive to request a refund. Nonetheless, the board did not require retailers to turn the refund over to customers, but allowed retailers to collect refunds only when the retailer had to pay a refund to a customer. "Thus the entire burden is upon the customer. Unless the customer demands his refund, the money erroneously collected will remain with the Board, despite the fact that the customer is the one entitled to it. Moreover, the customer has been informed of this right solely by means of a general press release. The Board has not required the retailer to notify his customer that the refund is due and owing, even though the retailer has all the necessary information. In short under the procedure which it has established, the Board is very likely to become enriched at the expense of the customer to whom the amount of the excessive tax actually belongs." (*Id.* at pp. 801-802.)

In *Javor*, plaintiff brought an action on behalf of consumer-purchasers against defendant retailers; plaintiff sought also to join the board, who could then compel the retailers to turn the refund over to the customers. The board demurred. The court first found the requirements of a class action were met. (*Javor* v. *State Board of Equalization, supra*, 12 Cal.3d at pp. 796-797.) It then reversed sustaining the board's demurrer. Although the court was "fashion[ing] an appropriate remedy to effect the customers' right to their refund" (*id.* at p. 800), the court did not order a remedy to anyone not a party to the action. *Javor* is distinguishable as a class action.

The trial court exceeded its jurisdiction in fashioning a remedy for taxpayers who were not properly before it.

Finally, plaintiffs request that this court take additional evidence of certain postjudgment correspondence between counsel on whether defendants were voluntarily giving notice of the court's ruling to those who paid the motor vehicle smog impact fee pursuant to the "fact sheet" proposed by defendants in response to the trial court's request. In cases where there is no jury trial, Code of Civil Procedure section 909 permits an appellate court to take additional evidence "in the interests of justice." Those interests are not implicated here. The judgment did not require defendants to give notice that the motor vehicle smog impact fee had been declared unconstitutional. Correspondence as to whether defendants were doing so voluntarily is irrelevant to any issue in this appeal. We decline the request to take additional evidence.

## IV

Defendants contend the only proper defendant in this case is the SBE, as it is the only entity that can provide plaintiffs with a refund. (Rev. & Tax.

Code, § 6933.) Defendants contend that since they have no power to grant a refund, the state and the DMV were improperly joined as defendants.

In support of their argument, defendants cite *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281], in which the high court found the state and two employees of the Coastal Zone Conservation Commission were improperly joined in a mandamus action to review denial of a permit. "Insofar as [real party in interest] seeks a review of the Commission's denial of its permit, only the Commission and its members may set aside the decision. The fourth 'and fifth causes of action both relate to the constitutionality of the Act on its face, and the petition contains no allegations establishing any right to declaratory relief against the state (as distinguished from the Commission acting as its agent) or against the Commission employees in this regard." (*Id.* at p. 255.) The court held the demurrers alleging misjoinder should have been sustained. (*Ibid.*)

Defendants argue that here only the SBE, like the Commission in *State of California* v. *Superior Court,* can grant the relief requested. Defendants failed to raise this issue in their answer. It is now made too late. ■ Failure to object to a defect in the pleadings, such as misjoinder of parties, by demurrer or answer waives the objection. (Code Civ. Proc., § 430.80, subd. (a); *Shapiro* v. *Ogle* (1972) 28 Cal.App.3d 261, 268 [104 Cal.Rptr. 553].)

## V

■ In support of their motion for summary judgment, plaintiffs provided the declaration of Thomas Austin, who declared that a majority of federally certified vehicles "could have been" certified to California emission standards. Defendants objected to the admission of Austin's declaration. The trial court overruled the objection and relied on Austin's declaration in finding defendants failed to show a justification for the discriminatory motor vehicle smog impact fee. The court rejected defendants' assertion that California-certified vehicles were less harmful to the environment than federally certified vehicles.

Defendants contend it was error to consider Austin's declaration. They assert it does not meet the standards for admission of an expert's declaration; there are no facts to support the opinion given and what "could have" happened is speculative and irrelevant.

Austin's declaration is conclusory in that he provides no factual data to support his opinions. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1137 [213 Cal.Rptr. 750].)

Defendants, however, have failed to show any prejudice from its admission. On appeal, defendants argue the motor vehicle smog impact fee is not discriminatory. They do not contend the discrimination was justified by a legitimate state purpose that could not be served by reasonable, nondiscriminatory means. Since the trial court relied on Austin's declaration only on the question of justification, an issue not raised on appeal, any error in so considering it must be deemed harmless. Moreover, even if the challenge to Austin's declaration is read to include an argument that the discrimination was justified, based on the Legislature's finding that California-certified vehicles are less harmful to the environment, defendants conceded at oral argument that they bore the burden of proof on this issue. They further conceded they failed to present any evidence that there was no reasonable, nondiscriminatory alternative. (*Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore., supra,* 511 U.S. 93, 100-101 [114 S.Ct. 1345, 1350-1351].) Any error in admission of Austin's declaration was harmless.

## DISPOSITION

The judgment is reversed with respect to the order that defendants enter claims for refund on behalf of those who pay the motor vehicle smog impact fee after the date the judgment is entered and notify such persons that this system for refunds is in place. The judgment is also reversed with respect to the order that defendants review their records and file individual claims for refund or set up and file a class action refund claim on behalf of all those who paid the motor vehicle smog impact fee on or after September 19, 1992, but prior to entry of judgment. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

Sims, Acting P. J., and Nicholson, J., concurred.