[No. C038339. Third Dist. July 22, 2002.]

ANNA JORDAN et al., Plaintiffs and Appellants, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

[No. C038343. Third Dist. July 22, 2002.]

STATE OF CALIFORNIA et al., Plaintiffs and Appellants, v. ANNA JORDAN et al., Real Parties in Interest and Appellants.

[No. C038735. Third Dist. July 22, 2002.]

DEAN ANDAL et al., Plaintiffs and Appellants, v. MILBERG, WEISS, BERSHAD, HYNES & LERACH et al., Defendants and Respondents.

**COUNSEL**

Milberg, Weiss, Bershad, Hynes & Lerach, Leonard B. Simon, Frank J. Janecek, Jr., William S. Dato; Weiss & Yourman, Joseph H. Weiss, Joseph D. Cohen; Keesal, Young & Logan, Samuel A. Keesal, Jr., Neal S. Robb, Ben Suter, Julie L. Taylor; Boutin, Dentino, Gibson, DiGuisto, Hodell & West, Stephen F. Boutin; Blumenthal, Ostroff & Markham, Norman Blumenthal, David Markham; Sullivan, Hill, Lewin, Rez & Engel, Jeffrey D. Lewin, Candance M. Carroll; Law Offices of Richard M. Pearl and Richard M. Pearl for Plaintiffs and Appellants in No. C038339, for Real Parties in Interest and Appellants in No. C038343 and for Defendants and Respondents in No. C038735.

Law Offices of Eric Seilset Norby and Eric Seilset Norby for Plaintiffs and Appellants in No. C038735.

Bill Lockyer, Attorney General, Peter J. Siggins, Chief Deputy Attorney General, Lawrence K. Keethe and Michael J. Cornez, Deputy Attorneys General; Jones, Day, Reavis & Pogue, Elwood Lui, Scott D. Bertzyk and

Eugenia Castruccio Salamon for Plaintiffs and Appellants in No. C038343 and for Defendants and Appellants in No. C038339.

## OPINION

**MORRISON, J.**—In these consolidated appeals we determine whether the trial court erred in vacating the arbitration award of $88,479,713 for fees and expenses in settlement of *Jordan v. Department of Motor Vehicles* (1999) 75 Cal.App.4th 449 [89 Cal.Rptr.2d 333] (*Jordan*), the case that held the smog impact fee was unconstitutional. We also address a challenge to the validity of Revenue and Taxation Code section 6909, subdivision (b) (section 6909(b)), the statute that authorized the arbitration.

Although we recognize the limited scope of judicial review of an arbitration award under *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), we find this case falls in the limited and exceptional circumstance justifying judicial review of an award that violates an explicit expression of public policy. An award of over $88 million in public monies pursuant to statutory authority for an arbitration "in the settlement of" an $18 million dispute is an unconstitutional gift of public funds. As such it violates both section 6909(b), which authorizes the arbitration, and the public policy set forth in article XVI, section 6 of the California Constitution, prohibiting gifts of public funds. We affirm the judgment vacating the arbitration award.

Subject to the implicit limitation that the arbitration award not exceed $18 million, we find section 6909(b) is not unconstitutional as a delegation of the Legislature's power to appropriate money. We affirm the judgment dismissing the declaratory relief action.

### BACKGROUND

In 1990, the Legislature enacted Revenue and Taxation Code sections 6261 through 6263, creating the motor vehicle smog impact fee. (Stats. 1990, ch. 453, § 1, pp. 1955-1956.) Under this statutory scheme, a $300 fee was imposed to register motor vehicles in California if the vehicle was last registered in another state, unless the vehicle was California certified. (Former Rev. & Tax. Code, § 6262, subd. (a).)

Four individuals (the *Jordan* plaintiffs) moved to California, registered their out-of-state vehicles, and each paid the $300 smog impact fee. Challenging the constitutionality of the smog impact fee, they sought refunds,

which were denied. They filed a complaint seeking refunds of the smog impact fees and a declaration that the smog impact fee was unconstitutional. (*Jordan, supra,* 75 Cal.App.4th at p. 456.)

The trial court declared the motor vehicle smog impact fee unconstitutional under the commerce clause of the United States Constitution and under article XIX of the California Constitution. It ordered the state to refund the fee to the *Jordan* plaintiffs, to enter a claim for refund for those who paid the fee after entry of judgment, and to file claims for refund or to set up and file a class action for those who paid the fee on or after September 19, 1992 (three years before the initial complaint), but prior to entry of judgment. (*Jordan, supra,* 75 Cal.App.4th at p. 459.)

In a subsequent proceeding, the trial court found the efforts of the *Jordan* plaintiffs and their counsel resulted in creation of a common fund of $363,886,398.44. The court awarded counsel 5 percent of this fund or $18,194,319.92 in fees and expenses. (For ease of reference we shall refer to this amount as simply $18 million.)

On appeal, this court upheld the trial court's finding that the motor vehicle smog impact fee was unconstitutional. (*Jordan, supra,* 75 Cal.App.4th at pp. 464, 466.) We found, however, that the trial court exceeded its jurisdiction in fashioning a remedy for taxpayers who were not properly before it. (*Id.* at p. 468.) The judgment was reversed with respect to orders that refunds be filed or paid to anyone other than the four *Jordan* plaintiffs. (*Id.* at p. 470.)

In response to the *Jordan* decision, *supra,* 75 Cal.App.4th 449, the Governor announced: "I have read that opinion. I think it is sound and I have decided not to appeal the case." He further announced he had asked the Department of Motor Vehicles and the Department of Finance to prepare and present to the Legislature a workable plan to refund the fees collected. "I believe everyone who paid the fee is entitled to a refund."

In the meantime, the state appealed from the fee award. Neither the *Jordan* plaintiffs nor their attorneys cross-appealed. The matter was fully briefed and set for oral argument on February 18, 2000. At the request of the parties, argument was continued to allow the parties to settle the matter through mediation. On May 9, 2000, the parties wrote this court, requesting a second continuance because the parties had agreed to arbitration. The letter stated: "They are currently in the process of working out the detailed terms of the arbitration."

On June 8, 2000, the Governor signed two bills passed by the Legislature: Assembly Bill No. 809 (1999-2000 Reg. Sess.) and Senate Bill No. 215

(1999-2000 Reg. Sess.). (Stats. 2000, chs. 31 & 32.) The Legislature found and declared that approximately 1,700,000 vehicle owners paid the smog impact fee, for a total of approximately $500 million. In *Jordan, supra*, 75 Cal.App.4th 449, the court declared the smog impact fee unconstitutional. The Governor announced the state would not appeal the *Jordan* decision and would refund the smog impact fee plus interest to all who paid it.

The express legislative intent of these two bills was to do all of the following: "(1) Repeal existing provisions of law that establish and impose the smog impact fee. [¶] (2) Require the Department of Motor Vehicles to search its records and promptly identify those persons who were, at the time the application for registration was completed, the registered owner or lessee of the vehicle and who are eligible for a refund of the smog impact fee. [¶] (3) Notify all eligible recipients the pending refunds and provide a simplified verification and claims procedure for those refunds. [¶] (4) Promptly provide payment of the smog impact fee refunds to eligible persons, including the three hundred dollar ($300) fee, any penalty fee collected for late payment of the smog impact fee, and any interest earned on those charges. [¶] (5) Appropriate the full amount of funds necessary to refund the smog impact fee, any penalty fee collected for late payment of the smog impact fee, and any interest due to those who paid the fee." (Stats. 2000, ch. 31, § 1(e); Stats. 2000, ch. 32, § 1(e).)

Senate Bill No. 215 added Revenue and Taxation Code section 6909. (Stats. 2000, ch. 32, § 5.) That section provided for the creation of the Smog Impact Fee Refund Account in the amount of $665,261,000. (Rev. & Tax. Code, § 6909, subd. (a).) Section 6909(b) provides: "Notwithstanding Section 13340 of the Government Code, the moneys in the Smog Impact Fee Refund Account in the Special Deposit Fund are hereby continuously appropriated, without regard to fiscal years, to the Department of Motor Vehicles for the purpose of making refunds to persons who paid the smog impact fee formerly required by Chapter 3.3 (commencing with Section 6261) upon registering a vehicle in California. Each refund shall also include the amount of any penalties incurred by the payer with respect to the fee, and shall also include interest as specified in Sections 1673.2 and 1673.4 of the Vehicle Code. In addition, the appropriate level of court costs, fees and expenses in the settlement of the case of Jordan v. Department of Motor Vehicles[, *supra*,] 75 Cal.App.4th 449, shall be determined through binding arbitration, and all of those fees, costs, or expenses shall be paid with funds from the account." Any amounts remaining in the account on or after June 30, 2004, shall revert to the General Fund. (Rev. & Tax. Code, § 6909, subd. (d).)

Counsel for the *Jordan* plaintiffs (Attorneys) and the state entered into an agreement, entitled "Agreement to Arbitrate Amount of Attorneys' Fees."

The agreement recites that fees and expenses (Fees) were awarded in the superior court and that award is the subject of an appeal by the state. "Rather than pursue that appeal and possible future proceedings in the Superior Court, the parties have agreed to submit the issue of Fees to binding arbitration before a panel of three retired judges." The agreement set forth the terms and procedures for that arbitration. It provided: "Attorneys may argue entitlement to any amount of Fees on any theory they believe is supported by the facts and circumstances of the case. Defendants may oppose the requested amount on any basis they deem appropriate."

The appeal from the $18 million fee award was dismissed.

The arbitration panel determined the case was a common fund case. It further determined that 13.3 percent of the total fund or $88,479,713 is an appropriate award of fees and expenses to Attorneys.

The state sought reconsideration of the award, contending it was unreasonable. The Governor supported the request for reconsideration. In a reply brief, the state argued, for the first time, that section 6909(b) set a limit on the award of $18 million.

The arbitration panel denied the motion for reconsideration. It found no authority to reconsider the award and found no compelling reason presented to do so.

One of the arbitrators, Retired Chief Justice Malcolm Lucas, dissented from the denial of reconsideration. Although he was not prepared to conclude that the panel had erred in making the award, his tentative view was that the award might violate public policy for two reasons. "*First,* if the State is correct that the Legislature's intent in enacting section 6909, subdivision (b) was to allow an award *of up to $18 million,* any award in excess of that amount is clearly contrary to public policy, *i.e.,* to the amount intended and prescribed by the Legislature. *Second,* and perhaps even more troublesome, is that, as I note below, any award for legislative action prompted by plaintiffs' counsel might be deemed to be compensation for sponsoring favorable legislation. Any such award would violate, not just public policy, but also might be an unconstitutional gift of public funds." Chief Justice Lucas also wondered whether the panel may have erred in awarding fees based on the entire fund, so that there was a double-dip of "fees based on fees"; awarded a too handsome rate of $8,800 per hour; and overestimated the risk involved in a purely legal question that was not factually complex and required no protracted discovery. He concluded by observing "the State may have grounds for holding fast to its current view that any award over

$18 million is in violation of section 6909, subdivision (b) and is an unconstitutional gift of public funds."

The Attorneys petitioned to confirm the arbitration award. The state petitioned for a writ of mandate to vacate the award or to vacate the arbitration award as it exceeded the panel's powers and violated public policy.

Independently, Dean Andal and Donald Wolfe (collectively, Andal) brought an action to prevent the state from paying the arbitration award. In addition to an injunction or a writ of mandate to block payment of the award, Andal sought a declaration that the last sentence of section 6909(b) was unconstitutional and therefore both the arbitration agreement and award were void.

The trial court sustained the Attorneys' demurrer and dismissed the Andal action. Andal appealed from the judgment of dismissal.

The trial court vacated the arbitration award. It found it was an error of law to find a common fund in this case. Such a finding was precluded by *Jordan, supra,* 75 Cal.App.4th 449, and the refund account was the result of lobbying, not lawyering. The court found it was contrary to public policy to award a percentage of an appropriation to lobbyists and the refund account was a political decision, not in response to the attorneys' activities. The decision to award attorney fees for the legislative remedy was in excess of the arbitration panel's jurisdiction. There was no cap on the amount of fees that could be awarded, but the panel simply decided the wrong dispute. The award must be set aside.

■■ ■■ ■■ Attorneys appealed from the order denying the petition to confirm the arbitration award and the order granting the petition to vacate the award.[1] The state appealed from the portion of the order finding there was no limit on the arbitration award. We ordered all the appeals consolidated.

## DISCUSSION

### I

The arbitration agreement provided: "This award shall be binding on all parties, and there is no right of appeal, collateral attack, or other review."

---

[1] "An aggrieved party may appeal from: [¶] . . . [¶] . . . An order vacating an award unless a rehearing in arbitration is ordered." (Code Civ. Proc., § 1294, subd. (c).) The trial court vacated the arbitration award and did not order a rehearing, so the appeal is properly taken. (*Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 932-933 [106 Cal.Rptr. 240].) In an abundance of caution, the Attorneys petitioned for a writ of mandate directing the trial court to confirm the arbitration award. We summarily denied that petition.

■ Arbitration awards are final and conclusive because the parties have agreed they should be so. (*Moncharsh, supra,* 3 Cal.4th 1, 10.) "This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute. [Citation.]" (*Ibid.*) To ensure the arbitration decision is final and conclusive, only limited judicial review is available. Courts may not review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence. (*Id.* at p. 11.) Indeed, an arbitrator's decision is not generally reviewable for errors of fact or law, even if the error appears on the face of the award and causes substantial injustice. (*Id.* at p. 6.) "[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Id.* at p. 33.)

Code of Civil Procedure section 1286.2 sets forth the bases on which a court "shall" vacate an arbitration award. A court shall vacate an award if it determines "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (*Id.,* at subd. (a)(4).) ■ An arbitrator exceeds his powers when he acts without subject matter jurisdiction (*National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1724 [1 Cal.Rptr.2d 570]), decides an issue that was not submitted to arbitration (*California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 952 [75 Cal.Rptr.2d 1]; *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1143 [228 Cal.Rptr. 645]), arbitrarily remakes the contract (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 590 [19 Cal.Rptr.2d 295]), upholds an illegal contract (*Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 609 [204 P.2d 23]), issues an award that violates a well-defined public policy (*City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 338-340 [91 Cal.Rptr.2d 500]), issues an award that violates a statutory right (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272 [52 Cal.Rptr.2d 115, 914 P.2d 193]), fashions a remedy that is not rationally related to the contract (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 [36 Cal.Rptr.2d 581, 885 P.2d 994]), or selects a remedy not authorized by law (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 248 [28 Cal.Rptr.2d 402] [appointing receiver]; *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1350 [19 Cal.Rptr.2d 215] [imposing economic sanctions to enforce award]). In other words, an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law.

In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the

arbitrator's own assessment of his contractual authority. (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 376, fn. 9; *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087 [106 Cal.Rptr.2d 431].)

## II

■ The powers of arbitrators derive from, and are limited by, the agreement to arbitrate. (*Moncharsh, supra*, 3 Cal.4th at p. 8.) "Although [Code of Civil Procedure] section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers. [Citations.]" (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 372.)

■ The arbitration agreement empowered the arbitrators to award attorney fees and expenses to plaintiff's attorneys as a result of their efforts and success in the *Jordan* litigation. The award was $88 million in attorney fees, costs, and expenses in settlement of *Jordan, supra*, 75 Cal.App.4th 449. Since we cannot review the arbitrators' reasoning or the evidence (*Moncharsh, supra*, 3 Cal.4th at p. 11), we must conclude that the award does not exceed the arbitrators' powers under the agreement.

The agreement to arbitrate, however, does not stand alone; it was authorized by statute. Both the agreement and the award make explicit reference to section 6909(b) as the authority for the arbitration. The arbitration award states: "Pursuant to California Revenue and Taxation Code section 6909, subdivision (b), this Arbitration Panel awards 13.3% of the $665,261,000 Smog Impact Fee Refund fund, namely, the sum of $88,479,713 inclusive of attorney fees, costs and expenses to Claimants, in settlement of the case of Jordan v. Department of Motor Vehicles[, *supra*,] 75 Cal.App.4th 449." Section 6909(b) authorizes an arbitration award of "the appropriate level of court costs, fees, and expenses in the settlement of" the *Jordan* case.

■ "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

■ The state contends the decision vacating the arbitration award must be affirmed for three reasons. The arbitrators were limited to deciding the

amount of fees in accord with the *Jordan* decision, *supra*, 75 Cal.App.4th 449, which eliminated a common fund theory of recovery. Section 6909(b) limited the award to $18 million. An award in excess of $18 million violates public policy. We agree that section 6909(b) and public policy limit the award to $18 million.

The state argues section 6909(b) authorized an award of fees and costs for work on the *Jordan* case, *supra*, 75 Cal.App.4th 449, but not a percentage of the fund later created by the Legislature. The state contends that since it had a maximum exposure of $18 million in the dispute over attorney fees, the statutory authorization of an arbitration award "in settlement of" this dispute was necessarily limited to $18 million.

Attorneys argue the Legislature did not use "settlement" in the literal sense, noting that the *Jordan* case, *supra,* 75 Cal.App.4th 449 was not settled, but resolved by a final judgment. They contend there is ample evidence that the Legislature was aware that Attorneys sought more than $18 million in fees and nothing in section 6909(b) limits the award to $18 million. Attorneys provided evidence of their communications with legislators, indicating Attorneys were seeking more than $18 million in fees and that the legislators understood there was no cap on the amount the arbitrators could award. Statements of individual legislators, however, are accorded little weight in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

 Attorneys assert the lack of any limit on the amount of fees that could be awarded is shown by the language of the arbitration agreement, which provides: "Attorneys may argue entitlement to any amount of Fees on any theory they believe is supported by the facts and circumstances of the case. Defendants may oppose the requested amount on any basis they deem appropriate." Significantly, Attorneys assert, the State never argued before the arbitrators that there was a limit under section 6909(b) on the amount of fees that could be awarded.

Further, Attorneys argue there was no cap of $18 million because the state's exposure was not limited to that amount. Although they did not appeal from the $18 million fee award and they virtually conceded the fee award would have been reversed on appeal, they claim changed circumstances would have allowed a larger fee award on remand.[2] They contend they would have been entitled to a percentage of the common fund of the refund account established by the Legislature.

---

[2]Counsel for Attorneys stated he would not disagree with the trial court's assessment that the prospects of reversal were almost 100 percent. We read that concession to mean that an

■ California follows what is known as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].) The American rule was codified in Code of Civil Procedure section 1021, which states in part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." Case law has established certain nonstatutory exceptions to this rule, based on the inherent equitable powers of the court. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 34 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*).) One of these, and the only basis Attorneys offer for a fee award in excess of $18 million, is the common fund doctrine. " '[W]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund. [Citations.]' " (*Ibid.*)

"The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. [Citations.]" (*Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748].)

■ Application of the common fund in this case does not conform to these equitable underpinnings. The attorney fees would not be paid out of the recovery and borne by all who benefited. Those who paid the smog impact fee receive a refund of the entire amount plus interest and any penalty. (Veh. Code, § 1673.2.) No portion of their recovery is used to pay attorney fees. Any unencumbered amount remaining in the refund account on or after June 30, 2004, reverts to the state's general fund. (Rev. & Tax. Code, § 6909, subd. (d).) Thus, the attorney fees are paid by the state, not by the beneficiaries of the Attorneys' action.

The common fund doctrine is applicable only where plaintiffs' efforts have effected the creation or preservation of an identifiable fund of money

attorney fee award of $18 million could not be supported as reasonable attorney fees under the private attorney general doctrine of Code of Civil Procedure section 1021.5, a position with which we emphatically agree.

out of which the fees will be paid. (*Serrano III, supra,* 20 Cal.3d at pp. 37-38.) In *Serrano III,* the plaintiffs sought attorney fees under the common fund doctrine for litigation resulting in a judgment that required equalization of spending in California public schools. In denying fees under this theory, the Supreme Court observed the judgment itself had not created any fund. Any additional monies available for public education as a result of the judgment "will flow from legislative implementation of the judgment, not from the judgment itself." (*Id.* at p. 36.) The plaintiffs relied on a finding that the litigation resulted in an annual pool of $550 million and it was likely further sums would become available. "Again, however, we point out that any such increases in the total educational budget, while they may be termed a '*response*' to our *Serrano* decisions, are by no means *required* by them. It is for the Legislature to determine, in its conjoined political wisdom, whether the achievement of that degree of equality of educational opportunity which is required by the state Constitution is to be accompanied by an overall increase in educational funding." (*Ibid.,* italics in original.)

The creation of the refund account, while in response to the *Jordan* litigation, was not required by the *Jordan* litigation. In *Jordan,* this court held the trial court exceeded its jurisdiction in ordering refunds for those who had paid the smog impact fee. (*Jordan, supra,* 75 Cal.App.4th at p. 468.) The effect of the judgment was a declaration that the smog impact fee was unconstitutional and refunds of $1,200 for the four plaintiffs. (*Id.* at p. 470.) The decision to create the refund account and provide refunds for all who paid the smog impact fee was the independent policy decision of the Governor and the Legislature, in their conjoined political wisdom. As the *Jordan* decision makes clear, no court could order the refunds. (*Id.* at pp. 466-468.) The statute of limitations for many of the claims had expired; the claims could only be revived by legislative action. The decision to create the refund account and provide refunds for all flowed "from legislative implementation of the judgment, not from the judgment itself." (*Serrano III, supra,* 20 Cal.3d at p. 36.)

Attorneys contend *Serrano III* does not preclude a common fund fee award where a discretionary fund is created by the Legislature. First, they distinguish *Serrano III* on its facts. In *Serrano III,* the plaintiffs sought equality in education, not monetary relief. Further, they sought to have the fees paid by the state, not out of the money appropriated in response to the litigation. (*Serrano III, supra,* 20 Cal.3d at p. 37.) These factual distinctions, while they make the case against a common fund fee award even stronger in *Serrano III,* do not change the Supreme Court's requirement that a common fund fee award is appropriate only where the judgment creates or preserves the fund. While Attorneys sought a refund for all who paid the smog impact

fee, the refund was not the result of the litigation but of separate legislation in response to the litigation. Since "plaintiffs' efforts have not effected the creation or preservation of an identifiable 'fund' of money out of which they seek to recover their attorneys fees, the 'common fund' exception is inapplicable." (*Serrano III, supra,* at pp. 37-38.)

Attorneys next contend that *Serrano III* must be read in the context of "settled common-fund fee jurisprudence." They contend they are entitled to claim credit for benefits that are conferred as a result of the litigation, even if not required by the court's judgment. They cite to California cases that applied this catalyst theory in the context of determining the successful or prevailing party for purposes of attorney fees under Code of Civil Procedure section 1021.5, the private attorney general statute. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437]; *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 967 [259 Cal.Rptr. 599]; *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 844-845 [216 Cal.Rptr. 649].) We have no quarrel with the proposition that in determining attorney fees under Code of Civil Procedure section 1021.5, it is appropriate to consider whether plaintiffs' lawsuit "induced" the legislative response, or was a "material factor" or "contributed in a significant way" to refunds for all who paid the smog impact fee. (*Californians for Responsible Toxics Management v. Kizer, supra,* at p. 967.) Nor do we dispute that Attorneys are entitled to fees under the private attorney general statute. However, since these cases address a different theory supporting an attorney fee award, they are not useful in interpreting *Serrano III, supra,* 20 Cal.3d 25.

Attorneys contend the causation principles articulated in these statutory fee award cases are equally applicable to common fund awards. They cite to *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 91-92 [210 Cal.Rptr. 351] (*Cory*). In *Cory,* taxpayers sought to compel the Controller to enforce the Unclaimed Property Law (Code Civ. Proc., § 1500 et seq.) against banks that were retaining accounts that should have been turned over to the state. The Controller initially opposed the lawsuit, but switched sides and made successful claims against the banks. The result of the lawsuit was the creation of a common fund. (*Cory,* at p. 89.) The taxpayers sought attorney fees from this fund and the Controller opposed the fee award, arguing taxpayers' counsel was unnecessary as the Attorney General represented the depositors and the People of California. The court rejected this argument as "specious"; the taxpayers were the moving force behind the entire action. (*Id.* at p. 91.) Although the court in *Cory* spoke of the "causal connection" between the taxpayers' suit and the Controller's enforcement of the Unclaimed Property Law (*id.* at p. 92), *Cory* was a case in which the fund was

created by the lawsuit and thus is consistent with *Serrano III*. Further, the *Cory* court stressed that attorney fees should be paid out of the common fund, by reducing the beneficiaries' share thereof. "Those benefiting from the recovery of the fund, in this case some depositors and eventually the People of the State of California, must bear their share of the cost of litigation. Fees for taxpayers' attorneys will be deducted from the judgment, and each claimant's share reduced proportionately." (*Cory*, at pp. 90-91.) As discussed above, those who benefit from the smog impact fee refund account are not bearing any share of the cost of litigation or the Attorneys' fees; those fees will be borne solely by the state. Awarding a common fund fee in this case, therefore, is not compatible with the equitable underpinnings of the doctrine.

We recognize that other jurisdictions have awarded a common fund fee where the fund was not created by the litigation. For example, in *Kerr v. Killian* (2000) 197 Ariz. 213 [3 P.3d 1133], a class of taxpayers sought refund of state income taxes paid on their federal retirement contributions. While the case was pending, the Governor of Arizona directed the Department of Revenue to make refunds to all taxpayers who had filed timely refund claims. (*Id.* at p. 1136.) The appellate court held it was proper to award attorney fees under the common fund doctrine although the fund was not created by settlement or court order. (*Id.* at p. 1138.) In *In re Prudential Ins. Co. America Sales Litigation* (3d Cir. 1998) 148 F.3d 283, a class action lawsuit against an insurer alleging deceptive sales practices was settled and attorney fees were awarded under the common fund doctrine. The appellate court remanded the case for further examination of the extent to which the benefits of the settlement were created by class counsel. (*Id.* at p. 338.) It rejected, however, an argument that the causation standards are different in statutory fee-shifting cases and common fund cases. (*Id.* at p. 337, fn. 116.)

We decline to follow these cases from other jurisdictions. First, in neither case is the award of a common fund fee incompatible with the equitable underpinnings of the common fund doctrine, as it is here. In the Arizona tax refund case, the attorney fees were paid out of the fund by reducing the beneficiaries' share of the fund. (*Kerr v. Killian, supra*, 3 P.3d 1133, 1136.) In *In re Prudential Ins. Co. America Sales Litigation, supra*, 148 F.3d 283, 329, the fee award was part of the settlement; it was opposed only by certain class members. Further, while the Arizona court and the Third Circuit Court of Appeals are free to disregard the mandate of *Serrano III* that the fund be required by the lawsuit rather than merely a response to the lawsuit (*Serrano III, supra*, 20 Cal.3d at p. 36), we are not. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The common fund doctrine was not available as a basis for attorney fees in this case. Since Attorneys offer no other basis for an award of over $18

million in fees, the state's exposure was limited to the existing $18 million award.

The state contends a cap of $18 million must be read into section 6909(b) because otherwise the statute authorizes an arbitration award that is an unconstitutional gift of public funds. We agree.

Section 6 of article XVI of the California Constitution provides that the Legislature has no power "to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation . . . ." ■ The term "gift" in the constitutional provision "includes all appropriations of public money for which there is no authority or enforceable claim," even if there is a moral or equitable obligation. (*Conlin v. Board of Supervisors* (1893) 99 Cal. 17, 21-22 [33 P. 753].) "An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the meaning of that term, as used in this section, and it is none the less a gift that a sufficient motive appears for its appropriation, if the motive does not rest upon a valid consideration." (*Id.* at p. 22.)

"It is well settled that the primary question to be considered in determining whether an appropriation of public funds is to be considered a gift is whether the funds are to be used for a public or private purpose. If they are to be used for a public purpose, they are not a gift within the meaning of this constitutional prohibition. [Citation.]" (*California Teachers Assn. v. Board of Trustees* (1978) 82 Cal.App.3d 249, 257 [146 Cal.Rptr. 850].)

The settlement of a good faith dispute between the state and a private party is an appropriate use of public funds and not a gift because the relinquishment of a colorable legal claim in return for settlement funds is good consideration and establishes a valid public purpose. (*Orange County Foundation v. Irvine Co.* (1983) 139 Cal.App.3d 195, 200 [188 Cal.Rptr. 552].) The compromise of a wholly invalid claim, however, is inadequate consideration and the expenditure of public funds for such a claim serves no public purpose and violates the gift clause. (*Id.* at p. 201.)

■ The settlement of the attorney fee dispute in this case is a public purpose. The question is whether there is a public purpose in paying more than the state's established maximum exposure. We see no benefit to the public, only benefit to Attorneys. The payment of a claim that exceeds the maximum exposure is akin to payment of a wholly invalid claim and violates the gift clause. (*Orange County Foundation v. Irvine Co., supra,* 139 Cal.App.3d at pp. 200-201.) Because Attorneys had no colorable claim to

fees in excess of $18 million, any payment over $18 million serves no public purpose.

This conclusion does not mean any arbitration award that is legally insupportable is a gift of public funds. Such a conclusion would undermine the state's ability to submit claims to binding arbitration. An arbitrator is not constrained to decide disputes according to the rule of law and an arbitrator's decision is not reviewable for errors of law. (*Moncharsh, supra,* 3 Cal.4th 1, 11.) For example, an attorney fee award of $18 million in this case would not be legally supportable (see *ante,* fn. 2), but because $18 million is within the amount in dispute, settlement by payment of such amount would not be a gift of public funds. The payment would be supported by adequate consideration, the relinquishment of a colorable legal claim.

This case is unusual in that the state's maximum exposure was determined before arbitration by a trial court judgment from which only the state appealed. Attorneys offer no valid basis upon which the award could be increased. Where the state's maximum exposure is established by a judgment, a payment of more than that maximum in settlement of the dispute, without independent consideration, is a gift of public funds. In fact, since there is no legal basis for such an award of attorney fees, it is, as Chief Justice Lucas suggests, a payment for sponsoring favorable legislation. Nothing in section 6909(b) permits a payment for sponsoring favorable legislation; its appropriation is limited to "appropriate" attorney fees and costs. Therefore, the award is both against public policy and an unconstitutional gift of public funds.

 "If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Miller v. Municipal Court* (1943) 22 Cal.2d 818, 828 [142 P.2d 297].)

 Attorneys' construction of section 6909(b), with no cap on the amount of the arbitration award, would mean the Legislature authorized an unconstitutional gift of public funds. If so, the statute would be unconstitutional, as Andal asserts. Adhering to both the plain language of the statute and the presumption the Legislature intended to enact a constitutional statute, we must construe section 6909(b) as limiting the arbitration award for

attorney fees to $18 million. This construction does no violence to the language of the statute. Rather, it conforms to the usual and ordinary meaning of the language used. When section 6909(b) was enacted, only the state's appeal from the $18 million fee award was pending. An arbitration award "in settlement of" this dispute would reasonably be understood to be between $0 and $18 million.

In *Moncharsh, supra,* 3 Cal.4th 1, at page 32, the Supreme Court cautioned a court should be reluctant to overturn an arbitrator's award without "an explicit legislative expression of public policy." In *City of Palo Alto v. Service Employees Internat. Union, supra,* 77 Cal.App.4th 327, the arbitration award ordered reinstatement of an employee who had made credible threats of violence at the workplace. The appellate court found this award conflicted with a court-ordered injunction barring the employee from the workplace. Obedience to judicial orders was unquestionably an important public policy, so the award violated public policy and the order confirming the award was reversed. (*Id.* at pp. 338, 340.)

Here, the arbitration award violates a clear expression of public policy. (*Moncharsh, supra,* 3 Cal.4th at p. 32.) While the limitation on the arbitration award may not be explicit in section 6909(b), the prohibition against gifts of public funds is a clear public policy set forth in article XVI, section 6 of the California Constitution.

 Attorneys contend the state has waived the argument that the arbitrators exceeded their powers by awarding more than $18 million because the state failed to make that argument to the arbitrators.

In *Moncharsh, supra,* 3 Cal.4th at page 29, Moncharsh contended the award was subject to judicial review because a portion of the contract containing the arbitration agreement was illegal. The high court rejected the claim that Moncharsh had waived this contention. "We thus hold that unless the party is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal, he or she need not raise the illegality question prior to participating in the arbitration process, so long as the issue is raised before the arbitrator. Failure to raise the claim before the arbitrator, however, waives the claim for any future judicial review." (*Id.* at p. 31.)

In *Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371 [32 Cal.Rptr.2d 311] (*Paramount*), a school district appealed from an order confirming an arbitration award directing the district to pay monetary damages to a former probationary teacher. The district claimed the teacher's failure to comply with the claims requirement of the

Tort Claims Act barred the award. The court found to the extent this contention challenged the arbitrator's application of law, it was not reviewable. To the extent it challenged the legality of the monetary award, the court found, relying on *Moncharsh, supra,* 3 Cal.4th 1, it was waived for failure to raise it before the arbitrator. (*Paramount, supra,* at p. 1386.) The district's contention that the award constituted a gift of public funds was preserved for appeal because it was raised before the arbitrator. (*Id.* at p. 1388.)

The *Moncharsh* rule of waiver does not apply here. The state is not challenging the legality of all or any portion of the arbitration agreement, or the statute that authorized the arbitration. Rather, it has offered an interpretation that avoids a constitutional problem. The state does not contend that any monetary award would be a gift of public funds; it is only challenging the specific award made by the arbitrators.

The Legislature holds public monies in trust for public purposes and the "gift of public funds" limitation in the Constitution is directed to ensure that public funds are spent only on public purposes. (*Conlin v. Board of Supervisors, supra,* 99 Cal. at p. 22.) Therefore, in advancing the contention that an award of more than $18 million is a gift of public funds and cannot be allowed, the state seeks to protect not only its interests, but the interests of the public. "More importantly, it is clear 'that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.' [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316 [96 Cal.Rptr.2d 747, 1 P.3d 63]; see also Civ. Code, § 3513 ["Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."].)

Since the arbitration award violates the clear expression of public policy against gifts of public funds, the arbitrators exceeded their powers. The arbitration award of $88 million cannot stand. It is an unconstitutional gift of public funds and the arbitrators exceeded their powers in ordering the state to pay such an award. An award of a gift of public funds is not authorized by law; the state could not agree to it, the Legislature could not authorize it, and neither this nor any court could confirm it.

### III

There are two remedies available when the arbitrators exceed their powers. The award shall be vacated if "the award cannot be corrected without

affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).) Code of Civil Procedure section 1286.6, subdivision (b) permits correction of an award when the arbitrators exceed their powers, if the correction can be achieved without affecting the merits of the decision.

In *Blue Cross of California v. Jones* (1993) 19 Cal.App.4th 220 [23 Cal.Rptr.2d 359], a dispute over health care benefits went to arbitration. The arbitrator awarded the policy holders expenses and attorney fees and ordered Blue Cross to pay for 16 hours per day of home nursing care for their disabled son until his 18th birthday or death, whichever occurred first. The trial court granted the motion to confirm the award and denied Blue Cross's motion to vacate the award. On appeal Blue Cross argued the arbitrators rewrote the health care agreements by ordering nursing care that could exceed the policies' financial limits. (*Id.* at p. 227.) The court ordered the award corrected to provide the medical benefits would not exceed the $4 million limits of the policies. (*Id.* at p. 229.) The court found the award could be corrected without affecting the merits of the controversy; the correction merely restored the clear and undisputed financial limits to which the parties agreed. (*Ibid.*)

 Here, a correction would do more than merely impose an undisputed cap; it would drastically reduce the award from $88 million to $18 million. That section 6909(b) limited the award to $18 million was hardly undisputed. The Attorneys' position was that the award was not limited in any manner. Our conclusion that there is a limit on the award supports the state's argument that the common fund theory was inappropriate in this case. Because the change to the award affects the parties' arguments in the arbitration, a correction cannot be made without affecting the merits of the decision. The trial court did not err in vacating the arbitration award.

## IV

Andal's lawsuit was directed primarily at preventing the state from paying the arbitration award. It also sought a declaration that the last sentence of section 6909(b), authorizing the arbitration award to determine the appropriate amount of attorney fees, was unconstitutional. The trial court found declaratory relief was not proper at that time because the validity of the arbitration award was being litigated.

The trial court's refusal to decide the issue does not preclude this court from determining the constitutionality of section 6909(b) on appeal. Where the facts are not in dispute, an action for declaratory relief is a

proper vehicle for determining the constitutionality of a statute. (*Clark v. Burleigh* (1992) 4 Cal.4th 474, 481 [14 Cal.Rptr.2d 455, 841 P.2d 975].) A trial court has broad discretion to refuse to make a declaration or determination. (Code Civ. Proc., § 1061.) ▉ "In appeals from a demurrer dismissal of a declaratory relief action, appellate courts normally apply the abuse of discretion standard. [Citations.] However, if the facts are not in dispute, an appellate court can determine as a matter of law whether declaratory relief is a proper remedy. [Citation.]" (*C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 383 [22 Cal.Rptr.2d 360].) As the Attorneys recognize, judicial economy favors deciding this issue on the merits. Since we affirm the order vacating the arbitration award, another arbitration will be held. If Andal has a meritorious contention that the portion of section 6909(b) authorizing that arbitration is unconstitutional, that issue should be decided before the new arbitration commences.

▉ Although Andal's complaint offered a myriad of reasons why the last sentence of section 6909(b) was unconstitutional, on appeal they discuss only the contention that it is an improper delegation of the legislative power to appropriate money. Andal's appeal is premised on the assertion that section 6909(b) "delegated to arbitrators the unlimited power to determine the amount of an appropriation from the State Treasury to pay certain attorneys." Because we disagree with that interpretation of section 6909(b), we find Andal's contention unavailing.

▉ The doctrine prohibiting delegation of legislative power is well established in California. (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 375 [71 Cal.Rptr. 687, 445 P.2d 303].) The purpose of the doctrine is to ensure that the Legislature resolves the truly fundamental policy issues and that a grant of authority is accompanied by sufficient safeguards to prevent abuses. (*Id.* at p. 376.) That a third party performs some role in the application and implementation of an established legislative scheme does not render the legislation invalid as an unlawful delegation of legislative authority. (*Id.* at pp. 379-380.)

▉ In enacting section 6909(b), the Legislature made the fundamental policy decision to refund the smog impact fee and to settle the outstanding dispute over attorney fees. It appropriated money to accomplish both purposes. There was an outstanding judgment of $18 million in attorney fees, from which the state had appealed. Rather than proceed through an appeal and remand, the Legislature decided to have the dispute settled by arbitration. Andal offers no argument or authority that the state cannot settle its disputes by arbitration. The Legislature made the fundamental policy decision and appropriation; the arbitration was only to implement that decision.

Andal contends the Legislature put no limit on the arbitrator's power to determine the amount of the appropriation for attorney fees, but in effect gave the arbitrators a blank check to fill in the amount. As discussed above, section 6909(b) limited the amount the arbitrators could award to $18 million, the amount of the outstanding obligation. With this substantial safeguard, there was no delegation of the legislative authority to appropriate funds.

## V

Finally, Attorneys contend the trial court must order a new arbitration before the same panel because the state's original request for relief asked the court to "order the respondent Panel to reconsider its award and take such further action as is necessary in order to comply with section 6909(b) and make a lawful award within the limits of the jurisdictional mandate of section 6909(b)." Attorneys contend the state may not now withdraw its consent to a new arbitration before the same panel.

Code of Civil Procedure section 1287 provides in part: "If the award is vacated, the court may order a rehearing before new arbitrators. If the award is vacated on the grounds set forth in subdivision (d) or (e) [now subdivision (a)(4) or (5)] of Section 1286.2, the court with the consent of the parties to the court proceeding may order a rehearing before the original arbitrators." In supplemental briefing following the trial court's tentative decision, and again on appeal, the state made clear it does not consent to the same arbitration panel. Since the parties' consent is required to order a rehearing before the original arbitrators and the State does not consent, the rehearing must be before a new panel.

### DISPOSITION

The order vacating the arbitration award is affirmed. The trial court is directed to order a new arbitration before a new panel of arbitrators, in which the award shall not exceed $18,194,319.92 plus interest at the rate of 7 percent from July 27, 1998 (Cal. Const., art. XV, § 1). The judgment of dismissal in the Andal action is affirmed. The state shall recover its costs on appeal from Attorneys; the other parties shall bear their own costs.

Sims, Acting P. J., and Nicholson, J., concurred.

**SIMS, Acting P. J.**—I concur in the result and analysis of the majority opinion, which I understand to be as follows:

1. The only way attorneys could recover more than $18 million in fees was to recover on a common fund theory;

2. When the Legislature enacted Revenue and Taxation Code section 6909, subdivision (b) (section 6909(b)), authorizing arbitration of the fee dispute, attorneys' recovery on a common fund theory was barred by the decision of our Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303];

3. Section 6909(b), providing for binding arbitration of "the appropriate level of . . . fees . . . in the settlement of the case of Jordan v. Department of Motor Vehicles (1999) 75 Cal.App.4th 449 [89 Cal.Rptr.2d 333] . . . ," must be read as implicitly forbidding recovery on a common fund theory (or, put differently, to a cap of $18 million), because recovery by attorneys on a common fund theory would constitute an unconstitutional gift of public funds;

4. By awarding attorneys fees in excess of $18 million, the arbitrators exceeded their powers, because the fundamental source of their powers is section 6909(b), and their award violated that statute. (See Code Civ. Proc., § 1286.2, subd. (a)(4); see *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272 [52 Cal.Rptr.2d 115, 914 P.2d 193].)

Having said this, I write to add a few thoughts as to the practical effect of this case upon the government of the State of California (State) and upon its taxpayers.

On the one hand, it is all to the good that the State will not have to pay an $88 million fee award that was—at more than $8,000 per hour—completely in outer space, totally over-the-top.[1] The fact that attorneys even requested a fee award of that absurd magnitude from the taxpayers is a testament to the unreal world of greed in which some attorneys practice law in this day and age.

On the other hand, I think that this case will have other long-range effects that will be less beneficial to the State.

This is because the record of this case demonstrates that the State wantonly breached its arbitration agreement (Agreement) with attorneys in at least two important respects.

First, the Agreement provided in no uncertain terms, "This award shall be binding on all parties, and there is no right of appeal, collateral attack, or

---

[1]In his dissent to the denial of the State's request for reconsideration of the arbitration award, Retired Chief Justice Malcolm Lucas said the award of fees of $8,800 per hour "may be too handsome." Chief Justice Lucas was always the master of decorous understatement.

other review." What happened in this case is that when the gigantic magnitude of the fee award became known in Sacramento, the political stuff hit the fan, the State retained private counsel, and the State began to appeal, collaterally attack, and obtain review of the award like crazy. That is how we got here. This is the first breach of the Agreement by the State.

A second breach of the Agreement by the State occurred when, in its attack on the award, the State for the first time took the position that the arbitrators were limited by law to an award of $18 million. As a general rule, unless the arbitration "submission agreement" provides for a monetary cap on an award, there is no limit on the amount the arbitrators may award. (See *Blatt v. Farley* (1990) 226 Cal.App.3d 621 [276 Cal.Rptr. 612].) Of course, the Agreement in this case contains no such limitation. Indeed, the State's position flies in the face of the language of the Agreement that provides, "Attorneys may argue entitlement to any amount of Fees on any theory they believe is supported by the facts and circumstances of the case." This language clearly contemplated that attorneys could receive an award in excess of $18 million on a common fund theory. Indeed, at no time before or during the arbitration hearing did the State assert that the law or the Agreement imposed an $18 million cap on the award. There was simply not a peep from the State in this regard. Would you not think that if you were a party to an arbitration where attorneys were seeking more than $100 million in fees, at some point before or during the hearing, you would say to the arbitrators: "Ladies and gentlemen, not that it matters, but, by the way, you cannot lawfully award fees in excess of $18 million." I think you would say that if you believed it.

The State asserts that the language of the Agreement quoted above did not, in fact, authorize an award of more than $18 million, because the language merely permitted attorneys to "argue" entitlement to such an award. To put it charitably, this is a silly argument. Why would the Agreement authorize attorneys to "argue" for such an award if the State thought the arbitrators had no power to award that amount? Did the State's attorneys at the arbitration hearing simply want to watch the legal skills of attorneys in action? Was this some kind of moot court? I think not. Rather, the Agreement plainly contemplated that attorneys could seek more than $18 million on a common fund theory, and the arbitrators could lawfully make such an award.

So, in my view, the State wantonly breached the Agreement in at least two important respects. There is nothing attorneys can do about it, because the State cannot, by contract, authorize an unconstitutional gift of public funds. (Cal. Const., art. XVI, § 6; *Orange County Foundation v. Irvine Co.* (1983) 139 Cal.App.3d 195, 200-201 [188 Cal.Rptr. 552].)

However, I think this case will have serious deleterious consequences for the State in the future. This case illustrates that the State will breach an arbitration agreement with impunity when it is in the State's interest to do so. This case will therefore result in fewer private citizens agreeing to arbitrate disputes—and particularly major disputes—with the State. We will all see these major cases in court, at considerable increased expense to the taxpayers.

Lest I be misunderstood, I leave it to the attorneys of this state to advise their clients when the clients ask whether they should agree to binding arbitration with the State.

But I know what I would say.

Nicholson, J., and Morrison, J., concurred.

Petitions for a rehearing were denied August 20, 2002, and the opinion was modified to read as printed above. Appellants' petitions in C038339 and C038343 for review by the the Supreme Court were denied November 26, 2002.