[No. C005997. Third Dist. Dec. 21, 1990.]

MICHAEL T. BLATT et al., Plaintiffs and Appellants, v.
JOHN FARLEY, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication.
See footnote 1, *post,* page 624.

**COUNSEL**

Michael F. Babitzke for Plaintiffs and Appellants.

Lapidus & Reiff and Cary S. Lapidus for Defendant and Respondent.

**OPINION**

**SIMS, J.**—In this case arising out of a contractual commercial arbitration conducted pursuant to rules of the American Arbitration Association

(AAA), we discuss the difference between a "submission agreement" and a "demand for arbitration."

Respondent John Farley prevailed in the contractual arbitration of a dispute concerning investment advice given by his investment advisor, appellants Sun West Sports and Associates and its sole proprietor Michael T. Blatt (collectively Blatt). The trial court confirmed the award. Blatt appeals, contending the arbitrators (1) exceeded their authority by awarding more damages than were allowed by the submission agreement of the parties; (2) erroneously awarded Farley his attorneys' fees; (3) failed to deduct a settlement amount others had paid Farley; and (4) prejudicially refused to continue the hearing and hear evidence.

In this published portion of the opinion,[1] we consider and reject Blatt's first contention. In an unpublished portion, we reject Blatt's remaining contentions and conclude Farley is entitled to reasonable attorneys' fees incurred on appeal. We therefore affirm the judgment and remand for a determination of Farley's attorneys' fees.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1984, Farley, then a college football player, hired Blatt as his sports agent and investment advisor under a written "Player Representative Agreement." The contract provided in relevant part: "DISPUTES: The parties hereto shall submit all disputes arising out of or relating to this Agreement to binding arbitration before the American Arbitration Association."

At some point, a dispute arose concerning a tax-sheltered investment that Blatt advised Farley to purchase. In October 1987, Farley filed a "Demand for Arbitration" (Demand), on a form prepared by the AAA, naming Blatt, as well as Prudential Bache Securities Inc. and Robert Post, a Prudential Bache broker (collectively Prudential Bache). A copy of Farley's Demand is attached, *post*, as appendix A. It states in part: "NATURE OF DISPUTE: Unsuitable investment recommendations, misrepresentations and omissions in connection with the sale of securities. [¶] CLAIM OR RELIEF SOUGHT: (Amount If Any) $80,000 Plus Interest, Attorney's Fees and Punitive Damages."

The arbitration was conducted during September and October 1988.

In November 1988, the arbitrators awarded Farley $204,886, including $137,000 for "damages, interest and tax liabilities," $10,000 punitive damages, $49,000 attorneys' fees, and various legal and administrative expenses.

---

[1] All portions of the opinion, including the appendix, shall be published except parts II through V of the Discussion.

Farley filed a petition to confirm the award, and Blatt filed a motion to vacate the award. (Code Civ. Proc. § 1285 et seq.; all further statutory references are to the Code of Civil Procedure unless otherwise indicated.) The matters were submitted on declarations and attached documents, memoranda of points and authorities, and oral argument.

The trial court denied Blatt's motion to vacate the award and granted Farley's petition to confirm the award. Judgment was entered and Blatt filed a timely appeal.

DISCUSSION

I

*The Arbitrators' Award of $137,000 Did Not Violate the Submission Agreement of the Parties.*

 Blatt contends the arbitrators exceeded their contractual authority by (a) awarding damages in excess of $80,000, and (b) awarding any sums at all to reimburse Farley for tax liabilities.

Preliminarily we note that, "The only grounds upon which a court—trial or appellate—may vacate an arbitration award are set forth in Code of Civil procedure section 1286.2." (*Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450, fn. omitted [157 Cal.Rptr. 167].) Subdivision (d) of section 1286.2 provides for vacation when, "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." "[I]t is well settled . . . that an agreement to arbitrate is a contractual matter, and as such, a party cannot be required to arbitrate an issue or grievance it has not agreed would be subject to arbitration. [Citations.]" (*Pacific Crown Distributors* v. *Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1143 [228 Cal.Rptr. 645]; see *Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345]; *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 184 [260 P.2d 156].) In line with this contractual limitation on the power of an arbitrator, rule 43 of the AAA's Commercial Arbitration Rules (1988)[2] provides in pertinent part, "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable *and within the scope of the agreement of the parties,* . . ." (Italics added.)

 In his opening brief, Blatt contends Farley's Demand (appen. A, *post*) constitutes the parties' agreement to arbitrate or "Submission Agreement." He argues that since the Demand was limited to $80,000, and made no provision for tax liabilities, the arbitrators exceeded their powers by making their award of $137,000, which included tax liabilities.

---

[2] All further references to rules are to these rules.

However, Blatt confuses a demand for arbitration with a submission agreement under AAA rules.

■ "The source of, and the basis for, the institution of an arbitration proceeding may be either an agreement which provides for arbitration of future controversies or an agreement providing for the submission of existing controversies." (Rodman, Commercial Arbitration (1984) § 4.1, p. 82, fn. omitted.) "Submission is the technical designation of the contract by which parties agree to refer matters in dispute between them to be finally decided by [arbitration]." (*Id*. at p. 149; see also Black's Law Dictionary (5th ed. 1979) p. 1278.) "If parties have agreed in an underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration." (*Id*. at p. 93, fn. omitted.) If parties have an existing controversy over a matter not covered by a future dispute arbitration clause, they may jointly execute a "submission agreement" "describing the issue in dispute and affirming the parties' intention to arbitrate and abide by the award." (*Id*. at p. 149.)

Thus, where the parties have not previously agreed to arbitrate a dispute, they may agree to do so and commence the arbitration by filing a submission agreement under rule 7, which provides: "Parties to any existing dispute may commence an arbitration under these rules by filing at any regional office of the AAA three copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the matter in dispute, the amount of money involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate administrative fee as provided in the Administrative Fee Schedule."

■ Here, however, the parties did not have to execute a rule 7 submission agreement because their player/representative agreement already contained a submission agreement; i.e., they had agreed to "submit all disputes arising out of or relating to this Agreement to binding arbitration before the American Arbitration Association."

Where, as here, parties have a preexisting submission agreement, either party can commence arbitration proceedings simply by filing a demand for arbitration pursuant to rule 6, set out in the margin.[3]

---

[3] Rule 6 provides: "Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

"(a) The initiating party (hereinafter claimant) shall, within the time period, if any, specified in the contract(s), give written notice to the other party (hereinafter respondent) of its intention to arbitrate (Demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale requested, and

The Demand is a unilateral communication, requiring no agreement by the other side. The recipient may file an answer; however, if no answering statement is filed, it will be treated as a denial of the claim. (Rule 6, fn. 3, *ante*.) Accordingly, contrary to Blatt's understanding, the Demand is not an agreement but is simply a pleading analogous to a complaint in a civil lawsuit. (See Goldberg, A Lawyer's Guide To Commercial Arbitration (2d ed. 1983) p. 25.) "Its purpose is to inform the other party of the fact that the party intends to ask for a determination of the dispute between them." (Domke, Commercial Arbitration (rev. ed. 1990) § 14:01, p. 216.)

In his reply brief, Blatt for the first time raises a new theory by which he seeks to convert Farley's Demand into a submission agreement. Blatt argues he was not contractually obligated to proceed with arbitration, because the player/representative agreement by its own terms was effective only as long as a player contract was in effect, and Farley was not playing football at the time he filed the Demand. Blatt then concludes that, because he was not obligated to arbitrate, his election to proceed to arbitration constituted an "acceptance" of Farley's "offer" to arbitrate and thereby converted Farley's Demand into a submission agreement. The argument is not meritorious.

■ It is improper for Blatt to tender this new theory, involving factual questions and lacking legal authority, for the first time in his reply brief. (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484.) ■ In any event, written contracts to arbitrate future disputes are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.) Termination of other obligations of the parties under the contract does not bar enforcement of the agreement in the contract to arbitrate claims for damages by reason of breach up to the date of termination. (*B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.* (1963) 212 Cal.App.2d 689, 693-694 [28 Cal.Rptr. 382].) The arbitration clause in the player/representative agreement remained enforceable.

■ We are also unpersuaded that the participation of Prudential Bache, who was not a party to the player/representative agreement, somehow converts Farley's Demand into a submission agreement as to Blatt.

"(b) Shall file at any regional office of the AAA three copies of the notice and three copies of the arbitration provisions of the contract, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

"The AAA shall give notice of such filing to the respondent or respondents. A respondent may file an answering statement in duplicate with the AAA within ten days after notice from the AAA, in which event the respondent shall at the same time send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made in the answering statement, the appropriate fee provided in the Administrative Fee Schedule shall be forwarded to the AAA with the answering statement. If no answering statement is filed within the stated time, it will be treated as a denial of the claim. Failure to file an answering statement shall not operate to delay the arbitration."

We conclude the parties' submission agreement was the arbitration provision in the player/representative agreement. That provision broadly covered disputes "arising out of or related to" the agreement and placed no limitation on the amount of damages to be awarded.

■ Also contrary to Blatt's contention, Farley's claim for faulty investment advice is clearly a dispute "arising out of or relating to" the agreement, under which Blatt agreed to provide investment advice. *National Indemnity Co.* v. *Superior Court* (1972) 27 Cal.App.3d 345 [103 Cal.Rptr. 606], cited by Blatt, does not suggest otherwise. That case held an agreement to arbitrate an uninsured motorist claim did not encompass the insurer's claim that the insured had obtained the policy by fraud. Here, the arbitration clause is much broader. Moreover, to the extent the nature of the dispute implicates tort liability, "There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual." (*Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d at p. 182; see also *Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130] ["any controversy arising out of or relating to contract" broad enough to embrace tort having roots in contractual relationship between parties].)

■ We must also reject Blatt's argument that the arbitrators exceeded their authority by awarding "tax liabilities." Blatt does not dispute Farley's representation that the dispute here involved a tax-sheltered investment causing tax recapture damages. Such damages are not beyond the scope of the arbitration agreement.

■ Doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].) ■ The submission agreement authorized the relief granted by the arbitrators.

We have no occasion in this case to determine whether an arbitrator's award in excess of a demand may be subject to judicial review, because even assuming for the sake of argument the issue might be reviewable, Blatt made no such objection before the arbitrators and has therefore waived the issue.

At the arbitration hearing, Farley presented evidence and Blatt argued the merits of $230,000 damages. Blatt devoted several pages of his post-hearing brief to arguing the merits of these damages, commenting that "[Farley] would have the Board believe that he needs $231,035.00 to 'be made whole.' " There is no evidence that Blatt complained to the arbitrators that consideration of damages exceeding $80,000 required amendment of the Demand or was otherwise improper.

The rules provide that, "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object." (Rule 38.) "Usually if a party with knowledge of an irregularity in the proceedings continues, without objection, to take part in the proceedings, he waives any objection on account of such irregularity for he cannot thus take the chance of a favorable issue." (Rodman, *op. cit. supra*, at p. 399, fn. omitted; *Librascope Inc.* v. *Precision Lodge No. 1600 Internat. Assn. of Machinists* (1961) 189 Cal.App.2d 71 [10 Cal.Rptr. 795] [waiver or estoppel may defeat challenge to award made after expiration of time specified in submission].)

 The award may not be set aside on the ground it exceeded the amount contained in the Demand. *William B. Logan & Associates* v. *Monogram Precision Industries* (1960) 184 Cal.App.2d 12 [7 Cal.Rptr. 212], cited by Blatt, is distinguishable because there the arbitrator made an award in excess of the express limitations of the submission agreement. (*Id.* at p. 17.)

## II-V*

. . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed, and the cause remanded with direction to the trial court to determine and award respondent reasonable attorneys' fees for services performed on appeal. Respondent shall recover his costs on appeal.

Puglia, P. J., and Carr, J., concurred.

---

*See footnote, *ante*, page 624.

APPENDIX

EXHIBIT "A"

FROM ARBITION MBOITO SE 01.20.1980 10:26 P. 2
Arquet Sports & Associates, Rolfe` Int, Prudential-Bache Securities Inc. and Polaris Investment
MGT. Corp.

# AMERICAN ARBITRATION ASSOCIATION

RECEIVED

## COMMERCIAL ARBITRATION RULES
### DEMAND FOR ARBITRATION

OCT 28 1987

AAA SF

DATE: 10-29-87

TO: (Name:) Michael T. Blatt; Sun West Sports Associates

(and party spins where the Demand is made)

(Address:) 7883 North Pershing Ave., Stockton, CA 95207

(City and State:) Stockton, CA (Zip Code:) 95207

(Telephone:) ...

Named claimant, a party to an arbitration agreement contained in a written contract,

dated undated , providing for arbitration, hereby
demands arbitration thereunder.

(attach arbitration clause or quote hereunder:)

"The parties hereto shall submit all disputes arising
out of or relating to this Agreement to binding arbitration
before the American Arbitration Association".

NATURE OF DISPUTE:

Unsuitable investment recommendations,
misrepresentations and omissions in connection
with the sale of securities.

CLAIM OR RELIEF SOUGHT: (amount, if any) $80,000 plus interest, attorney's
fees and punitive damages.

TYPE OF BUSINESS:

Claimant Unemployed Respondent Financial Advisor/Sports
 Agent

HEARING LOCALE REQUESTED: San Francisco, CA
 (City and State)

You are hereby notified that copies of our arbitration agreement and of this demand are being
filed with the American Arbitration Association at its San Francisco, CA
Regional Office, with the request that it commence the administration of the arbitration. Under Section 7
of the Commercial Arbitration Rules, you may file an answering statement within seven days after notice
from the Administrator.

Signed _____ Title Attorney for John Farley
 (May be signed by a attorney)

Name of Claimant John Farley

Home or Business Address of Claimant 3304 Volney

City and State Stockton, CA Zip Code 95202

Telephone (209) 983-1415

Name of Attorney Cary S. Lapidus

Attorney's Address Taylor & Stanley, 655 Montgomery St, Suite 17
 San Francisco, CA 94111

City and State

Telephone (415) 421-4474