Filed 8/21/23  Roofco v. Hilbers CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROOFCO, INC., | C095973 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-00309603-CU-PA-GDS) |
| v. | |
| HILBERS, INC., | |
| Defendant and Respondent. | |

Plaintiff and appellant Roofco, Inc. (Roofco), appeals from a trial court order denying its petition to vacate an arbitration award.  The underlying dispute arose out of a subcontract wherein Roofco agreed to construct a roof on a structure being built by defendant and respondent Hilbers, Inc. (Hilbers).  The owner of the building raised concerns about the roof, and Roofco failed to adequately respond to Hilbers's request that it address those concerns.  Hilbers subsequently settled with the owner to resolve the owner's concerns and tendered payment to Roofco for the contract price less the settlement amount.  Roofco rejected Hilbers's tender and demanded arbitration; it sought

1

the full contract price.  The arbitrator denied Roofco's claim, and Roofco filed a petition to vacate the award in the trial court on the basis that the arbitrator exceeded his powers. (Code Civ. Proc., § 1286.2.)[1]  The trial court denied Roofco's petition and granted Hilbers's request to confirm the award.  (§ 1285.2.)

Appealing from the trial court's order, Roofco claims the court erred by not vacating the arbitration award on the basis that the arbitrator exceeded his powers. Specifically, Roofco contends the arbitrator was not authorized to deny its claim in its entirety because the parties agreed to a "high-low" arbitration, which required the arbitrator to issue an award between a floor and a ceiling.  Relatedly, Roofco argues that the arbitrator's award "essentially remade the contract between the parties" by fashioning a remedy not expressly provided for by a provision of the subcontract.

We reject Roofco's arguments.  As we will explain, the parties did not agree to a "high-low" arbitration, and the arbitrator's choice of remedies was rationally related to his implied interpretation of the contract and the breach.  We will affirm the judgment.

## FACTS AND PROCEEDINGS

*The Subcontract*

In August 2015, general contractor Hilbers and roofing subcontractor Roofco entered into a written subcontract by which Roofco agreed to construct a five-layer roof manufactured by GAF over a two-building shell being constructed by Hilbers for the contract price of $107,135.  An indemnity provision in the subcontract required Roofco to "assume liability, hold harmless, defend and indemnify" Hilbers "from and against any liability and all claims, liens, penalties, damages, including indirect, incidental and consequential damages, and specifically including damages due to delay, losses and expenses, including attorneys' fees" arising out of Roofco's performance of the contract.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

The subcontract's payment provision provided in relevant part: "In the event of any breach by [Roofco] of any provision or obligation of this Subcontract, or in the event of the assertion by other parties of any claim or lien against [Hilbers] arising out of [Roofco's] performance of this Contract, [Hilbers] shall have the right, but is not required, to retain out of any payments due or to become due to [Roofco] an amount sufficient to completely protect [Hilbers] from any and all loss, damage or expense therefrom until the situation has been remedied or adjusted by [Roofco] to the satisfaction of [Hilbers]."

The subcontract also contained an arbitration provision requiring the parties to submit to arbitration "[a]ny dispute arising out of this Subcontract or the Interpretation or performance thereof, and which does not involve the Owner." The arbitration provision authorized the arbitrator to "award compensatory, consequential, punitive and such other damages as the arbitrator deems proper," and provided that "[t]he award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." The arbitration provision did not provide for judicial review of the arbitrator's factual findings or legal conclusions.

*Dispute Background*[2]

In March 2016, the owner observed water on the nearly completed roof, and its roofing consultant, John Goveia, subsequently performed an investigation with Roofco and Hilbers in attendance. On May 2, Goveia issued a report (Goveia report) concluding the roof was defective and recommending that it be replaced.

On May 3, pursuant to the requirements of the subcontract--and, as the arbitrator later observed, perhaps in an effort to resolve the owner's concerns following the

---

[2] These facts are summarized from the arbitration award, which is generally not reviewable for factual errors. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*).)

investigation--Roofco submitted the GAF 10-year guarantee (manufacturer's warranty), which had been preceded by a visual roof inspection by a GAF representative who noted that no roof work was required.

The Goveia report was sent to Hilbers on May 31, who in turn sent the report to Roofco on June 8. Hilbers stated its expectation that Roofco would investigate the owner's concerns, meet with the owner regarding the deficiencies, and perform necessary repairs. Two days later, the owner's attorney notified GAF of the roof's deficiencies and demanded corrective action.

On June 9, Roofco submitted a 20-year guarantee, and a week later a GAF representative performed a visual inspection of the roof and found no water leaks. The GAF representative did not address the Goveia report's concerns regarding the roof's deficiencies. In August, in response to the owner's demand GAF fix the deficiencies, GAF's attorney replied that GAF's guarantee covered only leaks.

On August 30, Hilbers gave Roofco the option of setting up a third-party inspection of the roof, or having Hilbers set it up. The next day, Roofco replied that it was seeking information about the preferred method of examining the roof. Three weeks later, Hilbers requested a status update, but the record did not show that Roofco responded.

On September 26, "[a]pparently out of exasperation," the owner sent Hilbers a letter with a bid for replacing the roof as a basis for withholding payment until the issues were resolved; the letter suggested that repairs would be acceptable in lieu of replacement. On October 4, Roofco requested access to the roof, but it did not respond when Hilbers offered available dates in mid-October.

On January 16, 2017, Hilbers conveyed to Roofco the owner's offer to pay half of Roofco's subcontract balance of just over $60,000 to settle the dispute. The record did not reflect that Roofco responded. Four days later, Hilbers again asked Roofco about

4

hiring an expert to examine the roof and threatened to work out a settlement with the owner and backcharge Roofco if it did not address the issue.

In March, after Hilbers told Roofco that it was going to negotiate a settlement with the owner on Roofco's behalf, Roofco replied that it had an expert who wanted to see the roof. Roofco's expert examined the roof, and on March 28 Roofco told Hilbers that the roof appeared to be fine, but that the expert would need to confer with Roofco's attorney before proceeding further. Roofco's expert did not produce a report, and in June Roofco stated it was not interested in conducting additional testing.

In September, Hilbers and the owner reached a settlement agreement that provided the owner would withhold half of the contract price otherwise due to Hilbers because of defects in the roof.

After Hilbers received final payment from the owner in March 2018--more than a year after Hilbers conveyed the owner's offer to pay half of Roofco's contract price-- Hilbers sent Roofco a check for $58,936.50 in settlement of the dispute. Roofco never cashed the check, which the arbitrator construed as a rejection of Hilbers's settlement offer.

*Arbitration Proceedings*

Pursuant to the subcontract's arbitration provision, Roofco filed a demand with the American Arbitration Association seeking damages for breach of contract in the amount of $113,865, plus interest. Neither Roofco's arbitration demand nor its arbitration brief reflected an agreement between the parties that Roofco was entitled to a minimum award or argued that Roofco was entitled to any minimum amount other than the amount it demanded.

Hilbers filed an answering statement, which stated in part: "Respondent denies that it owes Roofco the amounts claimed because Respondent is entitled to an offset due to defective work performed by Roofco." Its statement of affirmative defenses denied that its acts or omissions had damaged Roofco "in any way or in any sum whatsoever." It

5

asserted that Roofco's work was defective, Roofco had failed or refused to defend it against the owner's concerns stated in the Goveia report, and Roofco's conduct had forced it to negotiate a settlement with the owner. Hilbers stated that it "properly backcharged Roofco the damages incurred as a result of Roofco's breach of contract and negligence and tendered payment to Roofco for the balance due and owing after applying said backcharge." Hilbers raised other defenses generally arguing that Roofco should recover nothing from its demand and praying for "such other and further relief as the Arbitrator may deem just and proper."

Hilbers's arbitration brief explained that it was forced to negotiate a settlement with the owner after Roofco failed or refused to promptly defend and indemnify it against the owner's concerns. It argued that Roofco was not entitled to the full subcontract price as it claimed, but rather was "entitled to *no more than* $51,094.50, which is less than the amount previously tendered to Roofco by Hilbers and Hilbers is therefore entitled to an award of attorneys' fees as the prevailing party in this arbitration."[3] (Italics added, underlining omitted.) Following the arbitration hearing, Hilbers again argued in its post-hearing brief that Roofco was entitled to "no more than" $51,094.50.

In its closing statement, Roofco argued that it was not objectively reasonable for Hilbers and the owner to withhold half of the subcontract price for alleged roof defects, and it was entitled to the full contract price offset by the $7,842 Hilbers had paid to release a mechanic's lien Roofco had placed on the property. Roofco did not argue that it was entitled to "at least" $51,094.50 or even once mention that number.

The arbitrator issued an interim award denying Roofco's claim. After setting forth the facts, summarized *ante*, the arbitrator noted that Roofco had attempted to satisfy the owner's concerns with the GAF 10- and 20-year guarantees but did not address the issues

---

**3** On appeal, Roofco contends that this sentence constitutes Hilbers's admission that Roofco was entitled to *no less than* $51,094.50.

6

raised by the Goveia report. The arbitrator observed that while Roofco had finally retained an expert who inspected the roof after much back and forth, the expert did not issue a report that could be reviewed by the owner and perhaps be used as the basis for a settlement. Thus, Hilbers was forced to obtain the most favorable bargain it could with the owner after notifying Roofco and giving it the opportunity to participate.

The arbitrator noted it was "tempting" to treat the case as a battle of the experts but observed that the "battle" was not held at a time when the Goveia report could have been addressed. Instead, Roofco's expert report was not provided until 2021, in preparation for arbitration. The arbitrator observed that the outcome of the dispute might have been different had Roofco "engaged in dialogue" with Hilbers regarding the Goveia report; there might have been no need to arbitrate the dispute, or the result of arbitration might have been different. The arbitrator concluded that "trying to evaluate whose expert is correct now ignores the dynamics that occurred in 2016 when [Hilbers] was desperately trying to obtain [Roofco's] input so that the former's dispute with the owner could be resolved."

In accordance with its analysis, the arbitrator denied Roofco's claim and did not award it any further payment under the subcontract. The arbitrator concluded that Hilbers was the prevailing party and awarded attorney fees as provided by the subcontract. The arbitrator subsequently issued a final award specifying the amount of attorney fees to which Hilbers was entitled.

*Trial Court Proceedings*

Roofco filed a petition to vacate the arbitration award in the trial court. (§ 1285 ["Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award"].) It contended the parties framed the issue as a *choice between* awards to Roofco of $113,865 or $51,094.50, and therefore the arbitrator exceeded his authority by denying Roofco's claim in its entirety. Roofco further argued that the arbitrator "in effect rewrote the contract between the parties" because no

7

subcontract provision authorized him to "forfeit" amounts owed to it under the subcontract.

Hilbers opposed Roofco's petition and requested that the trial court confirm the award.  (§ 1285.2 ["A response to a [petition to vacate an arbitration award] may request the court to dismiss the petition or to confirm, correct or vacate the award"].)   It argued that the arbitrator's award did not exceed the issues the parties submitted to arbitration, because Hilbers had denied that Roofco had been damaged in any way and prayed that Roofco took nothing by way of its demand.  Hilbers contended the issue submitted to the arbitrator was "what amount, *if any*, Roofco was entitled to from Hilbers."  Hilbers argued the arbitrator did not " 'remake' " the contract because no evidence suggested he drew the remedy from an extrinsic source rather than from the subcontract.

The trial court issued a tentative ruling denying Roofco's petition, and it affirmed the tentative ruling following a hearing.  The court reasoned there was no evidence to suggest the arbitrator derived the award from an extrinsic source beyond the subcontract, and it concluded that Roofco failed to meet its burden to show that the arbitrator rewrote the contract or that the arbitrator exceeded the scope of the issues the parties submitted for arbitration.

The trial court entered a final order and judgment on January 14, 2022.  Notice of entry of judgment was mailed January 25, 2022.  Plaintiff timely appealed.  The case was fully briefed in April 2023, and was assigned the current panel on April 28, 2023.

## DISCUSSION

### I

*Arbitration Award*

Roofco challenges the trial court's decision to deny its petition to vacate the award and to grant Hilbers's request to confirm the award.  As it did in the trial court, Roofco argues the arbitrator exceeded the scope of the issues submitted to arbitration by awarding it less than the minimum amount to which Hilbers acknowledged Roofco was

8

entitled under the subcontract.  Roofco also argues the arbitrator essentially remade the subcontract by issuing an award that was not expressly authorized by a provision of the subcontract.  We disagree.

A.  *Statutory Scheme and Standard of Review*

"The California Arbitration Act (CAA; § 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in this state.' " (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 10.)  Under the California Arbitration Act, "[t]he scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.)  Accordingly, the merits of an arbitration award are not subject to judicial review on questions of fact or law, "whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh*, *supra*, 3 Cal.4th at p. 6.)  Rather, judicial review of an arbitration award is limited to "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process," which are set out in sections 1286.2 (vacating an arbitration award) and 1286.6 (correcting an arbitration award).  (*Moncharsh*, at p. 12.)  As relevant here, section 1286.2, subdivision (a)(4) provides that the trial court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

The exception under section 1286.2, subdivision (a)(4) is narrowly construed. (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138.)  With respect to reviewing an arbitrator's determinations of arbitrability, our Supreme Court has recognized that "courts should generally defer to an arbitrator's finding that determination of a particular question is within the scope of his or her contractual authority," and that "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's

9

in determining the contractual scope of those powers." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 (*Advanced Micro Devices*).) A similar standard applies in the context of an arbitrator's choice of remedy: arbitrators have "substantial discretion to determine the scope of their contractual authority to fashion remedies, and . . . judicial review of their awards must be correspondingly narrow and deferential." (*Id.* at p. 376.)

However, " '[t]he powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.' " (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185; see *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 [" 'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission' "].) Accordingly, "[a]n exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers." (*Gueyffier*, at p. 1185.) "The scope of an arbitrator's authority is not so broad as to include an award of remedies 'expressly forbidden by the arbitration agreement or submission,' " and such awards may be corrected or vacated by the court. (*Ibid.*; see *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 383 ["arbitrators, unless *expressly restricted by the agreement of the parties*, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach" (italics added)].) Consistently with the principle, our Supreme Court has cautioned: "[P]arties entering into commercial contracts with arbitration clauses, if they wish the arbitrator's remedial authority to be specially restricted, would be well advised to set out such limitations explicitly and unambiguously in the arbitration clause." (*Advanced Micro Devices*, at p. 383.)

"[I]n the absence of more specific restrictions in the arbitration agreement, the submission or the rules of arbitration, the remedy an arbitrator fashions does not exceed

10

his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 367.) "Restated, the test asks ' "whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement." ' " (*Id.* at p. 380.) The requisite rational relationship between the remedy and the contract and the breach "may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator)." (*Id.* at p. 381.) "The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is compelled to infer the award was based on an extrinsic source. [Citations.] In close cases the arbitrator's decision must stand." (*Ibid.*)

As for the relevant standard of review, "[t]o the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. [Citation.] To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo. [Citation.] [¶] We apply a highly deferential standard of review to the award itself, insofar as our inquiry encompasses the arbitrator's resolution of questions of law or fact. Because the finality of arbitration awards is rooted in the parties' agreement to bypass the judicial system, ordinarily ' "[t]he merits of the controversy between the parties are not subject to judicial review." ' " (*Cooper v. Lavely & Singer Professional Corp.*, *supra*, 230 Cal.App.4th at pp. 11-12.)

B. *Scope of the Issues Submitted for Arbitration*

Roofco contends the arbitrator exceeded his authority by violating an unambiguous limitation set by the parties in their submissions to arbitration. It argues

11

that the parties agreed to a "high-low" arbitration, in which "[t]he dispute that was submitted to arbitration was whether Hilbers owed Roofco not more than $51,094.50, or whether it owed Roofco $106,023, or whether it owed Roofco some amount in between the two." But Roofco's argument relies on the unsupported assertion that Hilbers's statements in its pleadings--as opposed to a submission agreement reached by the parties--could restrict the arbitrator's authority to fashion a remedy. We conclude Roofco's argument lacks merit.

In the context of arbitration, " '[s]ubmission is the technical designation of the contract by which parties agree to refer matters in dispute between them to be finally decided by [arbitration].' [Citation.] 'If parties have agreed in an underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration.' [Citation.] If parties have an existing controversy over a matter not covered by a future dispute arbitration clause, they may jointly execute a 'submission agreement' 'describing the issue in dispute and affirming the parties' intention to arbitrate and abide by the award.' " (*Blatt v. Farley* (1990) 226 Cal.App.3d 621, 626 (*Blatt*); see *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437 ["A submission agreement may restrict or broaden the issues contemplated by the arbitration clause"].) Arbitration submissions are construed as broadly as possible. (*Kennedy, Cabot & Co., Inc. v. National Association of Securities Dealers, Inc.* (1996) 41 Cal.App.4th 1167, 1175.)

Conversely, a demand for arbitration is a "pleading analogous to a complaint in a civil lawsuit." (*Blatt*, *supra*, 226 Cal.App.3d at p. 627.) In *Blatt*, the court affirmed an arbitrator's award of damages greater than the amount requested in the arbitration demand. (*Id.* at p. 629.) The court concluded that the arbitration clause in the parties' contract, which did not limit damages, constituted an agreement by the parties to submit all disputes to arbitration and authorized the arbitrator to make the award. (*Id.* at p. 628.) The court rejected the argument that the arbitrator was limited by the dollar amount

12

requested in the arbitration demand, which was "a unilateral communication, requiring no agreement by the other side." (*Id.* at p. 627; see also *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231, 241 [award in excess of demand was proper because statute limiting award to prayer has no application to arbitration proceedings]; *Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1385 [award of compensatory damages for termination of teacher's employment was proper where contract permitted remedy as arbitrator "judges to be proper" and award did not modify or remake contract, or violate public policy].) In reaching its conclusion, the court in *Blatt* distinguished *William B. Logan & Associates v. Monogram Precision Industries* (1960) 184 Cal.App.2d 12 on the basis that the arbitrator in that case "made an award in excess of the express limitations of the submission agreement." (*Blatt*, at p. 629, citing *William B. Logan & Associates*, at p. 17.)

Here, the scope of the arbitrator's ability to fashion a remedy was restricted only by the subcontract's arbitration provision, which broadly provided that the arbitrator may resolve "[a]ny dispute arising out of this Subcontract or the interpretation or performance thereof," and authorized the arbitrator to "award compensatory, consequential, punitive and such other damages as the arbitrator deems proper." Roofco points us to no superseding submission agreement jointly entered into by the parties.

Despite the broadly worded arbitration provision providing no limitation on the amount the arbitrator was authorized to award, Roofco contends the parties limited the arbitrator's authority to fashion a remedy by entering into a " 'high-low' arbitration." *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408 and *Horath v. Hess* (2014) 225 Cal.App.4th 456, 465 provide examples of such arbitrations, and they are distinguishable from the instant case. In *Mave*, during jury selection for their trial, the parties agreed to arbitrate their dispute and expressly agreed: "the arbitration award would be limited to a low of $500,000 and a high of $7.5 million, but the arbitrator would not be told about the 'high low' provision." (*Mave Enterprises, Inc.*,

13

at p. 1417.)  Although not informed of the parties' " 'high low' " agreement, the arbitrator issued an award within the range agreed upon by the parties.  (*Id*. at p. 1418.)  Similarly, in *Horath*, prior to trial the parties stipulated:  "[The defendant] will pay the award of the Arbitrator or $44,000[,] whichever is greater, and [the plaintiff] will accept the award of the Arbitrator or $100,000, whichever is less but in no event less than $44,000."  (*Horath*, at pp. 460-461, italics omitted.)  There, the arbitrator was also not told about the " 'high-low' " provision, and he issued a decision awarding Horath an amount greater than the agreed-upon ceiling.  (*Id.* at pp. 461, 465.)  Horath filed a petition to confirm the award, and Hess filed a motion to limit the award to an amount reflecting the ceiling stipulated to by the parties.  (*Id.* at p. 461.)  On appeal, the court concluded Horath was entitled to have the award entered as a judgment, but Hess could satisfy the judgment by paying $100,000 plus costs, as the parties had agreed.  (*Id.* at pp. 465-466.)

Unlike *Mave* and *Horath*, where the parties expressly agreed to restrict the arbitrator's ability to issue an award outside of an agreed-upon range, Roofco points us to no agreement or stipulation between the parties restricting the arbitrator's authority to issue an award.  Instead, implicitly acknowledging that the parties did *not* stipulate to a "high-low" arbitration, Roofco argues that Hilbers *unilaterally* restricted the arbitrator's authority to issue an award of less than $51,094.50 by arguing in its answering statement, statement of affirmative defenses, and briefing that it was entitled to an "offset" and that Roofco was "entitled to *no more than* $51,094.50."  Roofco offers no authority supporting its argument that one party's pleadings may restrict the arbitrator's authority to fashion a remedy.  As we have explained, such restrictions are properly established only by the arbitration agreement or superseding submission agreement.  The parties' arbitration demands and responses, by contrast, do not constitute an "agreement" between the parties.  (See *Blatt*, *supra*, 226 Cal.App.3d at pp. 626-627 [demand for arbitration is

14

not a submission agreement; it is a unilateral communication requiring no agreement by the other side].)

We recognize that the parties to an arbitration may choose to agree to expand an arbitrator's authority by submitting issues for arbitration that the parties are not contractually compelled to submit. In such a case, "we look both to the contract and to the scope of the submissions to the arbitrator to determine the arbitrator's authority." (*Executone Information Systems, Inc. v. Davis* (5th Cir. 1994) 26 F.3d 1314, 1323; accord, *Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291.) However, this is not such a case.

Moreover, even if Hilbers were able to unilaterally restrict the arbitrator's authority, it did not do so here. Roofco relies on a definition of "no more than" from the online Collins English Dictionary: "You use no more than or not more than when you want to emphasize how small a number or amount is," providing as an example, "Each box requires no more than a few hours of labor to build." (Collins Dictionary Online (2023) <https://www.collinsdictionary.com/english/no-more-than-not-more-than> [as of May 24, 2023].) But assuming for argument only that Roofco's definition of the phrase "no more than" is a viable one, it is not the only one. "The ordinary meaning of 'no more than' is 'a stated number or fewer.' (Merriam-Webster Dict. Online (2021) <https://merriam-webster.com/dictionary/no more than> [as of July 19, 2021].)" (*Cahill Construction Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 777, 787.) Thus, Hilbers's statement could reasonably be interpreted as arguing that Roofco was entitled to $51,094.50 *or less*.

Nor did Hilbers's position statements during the arbitration expressly and unequivocally restrict the issue submitted to arbitration to a "high-low" choice. Hilbers generally denied that it owed Roofco the amounts Roofco claimed because it was entitled to an offset due to Roofco's deficient performance and that it properly "backcharged" Roofco for damages incurred as a result of its breach. Hilbers's prayer for relief

15

requested that "Roofco *takes nothing* by way of its Demand." (Italics added.) Its arbitration brief concluded that it was "entitled to an offset of *at least* $57,428.50 and the Arbitrator *should* order that Hilbers must pay Roofco the sum of *no more than* $51,094.50 and that Hilbers is the prevailing party in this action." (Italics added.) These statements fall well short of expressly and unequivocally prohibiting the arbitrator from issuing an award outside of the range between $51,094.50 and $106.023 (plus interest). Finally, there is similarly no evidence that Roofco ever argued that the arbitrator was restricted from issuing an award less than $51,094.50.

Construing the parties' submission to arbitration as broadly as possible, as we must, here the parties agreed to arbitrate the issue of breach of the subcontract, and the arbitration provision broadly authorized the arbitrator to determine the amount of damages. In the absence of any express agreed-upon submission restricting or limiting the arbitrator's authority to award damages to a "high-low" choice, we have no power to review the arbitrator's decision. (See *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 383 [parties who intend that an arbitrator's powers be restricted "would be well advised to set out such limitations explicitly and unambiguously in the arbitration clause"].)

We now turn to the issue of whether the award was rationally related to the arbitrator's interpretation of the subcontract and breach.

C. *Remedy's Rational Relationship to the Subcontract and the Breach*

Roofco argues the arbitrator's award was not authorized by a specific provision of the subcontract, and thus he arbitrarily rewrote the subcontract by "forfeit[ing]" money owed to Roofco under the subcontract. Roofco acknowledges the arbitrator's finding that it breached its obligation to defend Hilbers against claims arising out of its performance under the subcontract and to indemnify Hilbers for damages incurred related to such a breach, but argues the subcontract only authorized Hilbers to "retain out of any payments due or to become due to [Roofco] an amount sufficient to completely protect [Hilbers]

16

from any and all loss, damage or expense therefrom until the situation has been remedied or adjusted by [Roofco] to the satisfaction of [Hilbers]."

Roofco's argument stems from several cases issued prior to *Advanced Micro Devices* that determined an arbitrator exceeds their powers by issuing a decision "so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties." (*Southern Cal. Rapid Transit Dist. v. United Transportation Union* (1992) 5 Cal.App.4th 416, 423; *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 592-593 [judicial review of arbitration award warranted where the award "presents such an egregious mistake that it amounts to an arbitrary remaking of the contract between the parties"].) In *Advanced Micro Devices*, our Supreme Court questioned the continued validity of the "arbitrariness" test because arbitration awards generally may not be vacated or corrected for errors of fact or law. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 377, fn. 10; *id.* at p. 376.) However, the court did not decide that issue conclusively because, to the extent the test remained valid, it pertained to cases involving the *interpretation* of an agreement, whereas the issue before the court in that case involved the arbitrator's choice of remedies. (*Id.* at pp. 376-377.) The same is true here, where the issue does not involve the arbitrator's interpretation of the agreement, but rather "the remedies fashioned by an arbitrator." (*Id.* at p. 372.)

In *Advanced Micro Devices*, our Supreme Court established the test for determining whether the remedy an arbitrator fashions exceeds their powers, namely, that a remedy does not exceed the arbitrator's powers if it bears a rational relationship to the arbitrator's express or implied interpretation of the subcontract and to the breach found by the arbitrator. In establishing and applying that test, the court rejected the sole argument Roofco raises here: that an award must be vacated merely because the relief granted was not authorized by a specific term in the contract. The court recognized that "[a]rbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific

17

term of the contract." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 381.)  It added, "No exact correspondence is required between the rights and obligations of a party had the contract been performed and the remedy an arbitrator may provide for the other party's breach." (*Id*. at p. 382.)  Thus, an arbitrator may "award a party benefits different from those the party could have acquired through performance of the contract." (*Id.* at p. 382.)  Arbitrators "enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach." (*Id.* at p. 383.)  This is because parties to a private arbitration "have bargained for the relatively free exercise" of an arbitrator's "flexibility, creativity and sense of fairness" in selecting a particular remedy. (*Id.* at p. 374.)

The subcontract was not expressly interpreted by the arbitrator here, but it generally required that Roofco indemnify Hilbers for damages and defend Hilbers against claims arising out of Roofco's performance.  The subcontract's arbitration provision broadly authorized the arbitrator to "award compensatory, consequential, punitive and other such damages *as the arbitrator deems proper*." (Italics added.)  Accordingly, the arbitrator impliedly interpreted the broadly worded arbitration provision to authorize him to decide the proper amount of damages that were "just and fair under the circumstances existing at the time of arbitration." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 383; see *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 874-876 [arbitrator did not exceed authority by failing to award attorney fees, despite contractual provision entitling prevailing parties to attorney fees, where arbitrator interpreted the agreements as giving him discretion to deny an attorney fee award]; *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 530 [" 'Arbitrators have broad discretion in fashioning a remedy for the injustice which is found to have occurred' "].)

18

In applying the broad arbitration provision, the arbitrator made multiple findings about the nature of Roofco's breach. He found that Roofco had persistently refused to address the Goveia report, despite repeated requests that it do so, and when it finally retained an expert, the expert did not issue a report that could be reviewed by the owner or that could be the basis for a settlement. Accordingly, Hilbers was "forced to obtain the best bargain it could with the owner to resolve the dispute after giving notice to [Roofco] to participate." Noting that Roofco sought to "turn back the clock" in the arbitration, the arbitrator observed the dynamics as they existed in 2016 were such that Hilbers was left "desperately trying to obtain [Roofco's] input so that [Hilbers'] dispute with the owner could be resolved." Based on these findings and implied interpretation of the contract, the arbitrator decided that it was "just and fair under the circumstances existing at the time of arbitration" to deny Roofco's claim. That remedy was undoubtedly rationally related to "compensating for or alleviating the effects of the breach." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 381, fn. 12; *id*. at p. 383.) Thus, we cannot say that the arbitrator was not " 'even arguably construing or applying the contract and acting within the scope of his authority.' " (*Id.* at p. 378; see also *id*. at p. 381, fn. 12.) Accordingly, we conclude the remedy the arbitrator fashioned did not exceed his powers.

We note that Roofco does not argue the arbitrator's award was based on a source extrinsic to the subcontract or that the award was expressly *forbidden* by the subcontract (see *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1057 [arbitrator acted in excess of his power and jurisdiction by awarding a remedy expressly forbidden by the arbitration agreement and state law]), nor does it raise any viable argument regarding the rational relationship between the remedy, interpretation of the contract, and breach. At bottom, Roofco's contention amounts to no more than a disagreement with the merits of the arbitrator's decision, which is not subject to judicial review absent a contractual provision (not present here) authorizing judicial review of the merits of the decision. (*Moncharsh*,

*supra*, 3 Cal.4th at p. 6; *Cable Connections, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1361).)[4]

## DISPOSITION

The judgment is affirmed.  Hilbers shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Horst, J.*

---

[4]  Roofco observes that a disposition reversing a judgment automatically vacates an award of attorney fees (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 314), and argues that we should vacate the attorney fees award if we reverse the judgment.  Because we do not reverse the judgment, we do not vacate the attorney fees award.

*  Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.